583 So.2d 316 (1991)
Bryan Fredrick JENNINGS, Appellant,
v.
STATE of Florida, Appellee.
Bryan Fredrick JENNINGS, Petitioner,
v.
Richard DUGGER, Respondent.
Nos. 75689, 74926.
Supreme Court of Florida.
June 13, 1991.
Rehearing Denied August 20, 1991.
*317 Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR, and Jerome H. Nickerson and Bret R. Strand, Asst. Capital Collateral Representatives, Office of the Capital Collateral Representative, Tallahassee, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen., and Barbara C. Davis and Kellie A. Nielan, Asst. Attys. Gen., Daytona Beach, for appellee/respondent.
PER CURIAM.
Bryan Fredrick Jennings appeals to this Court from the trial court's denial of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Jennings additionally petitions this Court for habeas corpus relief. Because the death penalty was imposed in this case, we have jurisdiction under article V, sections 3(b)(1), (9), of the Florida Constitution.
The facts of Jennings' murder of six-year-old Rebecca Kunash were summarized by the trial judge in his original sentencing order and quoted by this Court in a prior opinion in this case:
"In the early morning hours of May 11, 1979, Rebecca Kunash was asleep in her bed. A nightlight had been left on in her room and her parents were asleep in another part of the house. The Defendant went to her window and saw Rebecca asleep. He forcibly removed the screen, opened the window, and climbed into her bedroom. He put his hand over her mouth, took her to his car and proceeded to an area near the Girard Street Canal on Merritt Island. He raped Rebecca, severely bruising and lacerating her vaginal area, using such force that he bruised his penis. In the course of events, he lifted Rebecca by her legs, brought her back over his head, and swung her like a sledge hammer onto the ground fracturing her skull and causing extensive damage to her brain. While she was still alive, Defendant took her into the canal and held her head under the water until she drowned. At the time of her death, Rebecca Kunash was six (6) years of age."
Jennings v. State, 512 So.2d 169, 175-176 (Fla. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988). After two initial trials and convictions,[1] Jennings was again tried and convicted of first-degree *318 murder, kidnapping, sexual battery, aggravated battery, and burglary, all in connection with Rebecca's death.[2] This Court affirmed those convictions and the death sentence in Jennings, 512 So.2d 169.
First, we consider Jennings' appeal from the trial court's denial of his rule 3.850 motion. Jennings' first claim in this appeal is that the state withheld material, exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Jennings claims that the state withheld a taped interview with Judy Slocum, who had driven Jennings home to change his clothes on the night of the murder. In the interview, Slocum stated that Jennings was "very much loaded" when she drove him home. Jennings argues that Slocum's testimony would have been material to both the guilt and penalty phases of the trial.
In rejecting this claim, the trial court stated:
In this claim defendant contends and the State concedes that the State violated the discovery rules by failing to disclose and produce the taped statement of Judy Slocum. Trial defense counsel now avers that had he known of the contents of the tape he would have used Slocum both in the guilt phase to bolster his defense of intoxication and during the penalty phase to add to his proof of the defendant's intoxication as a mitigating factor. Although this contention is not unexpected at this juncture of these proceedings, it is, nevertheless, belied by the record.
First, without doubt, the defendant had knowledge not only of Slocum's name but also the subject matter of her knowledge about the case. Not only was Jennings aware of her participation in the evening's events, defense was aware of the statement of Russell Schneider that Judy Slocum drove Bryan to his mother's house at about 11:30-12:00 p.m. to change his pants because his zipper was broken and that Jennings had been drinking large amounts of beer. Defense was also aware of the statement of Charles Clawson that Jennings had a girl drive him over to his mother's house about 10:00-11:00 p.m. because he felt he was unable to drive. Is it surprising, then, that Slocum's statement indicates that she drove Jennings home to change his pants because his zipper was broken and that he appeared "much loaded"? The Slocum statement merely confirmed the Schneider and Clawson statements.
All three statements, however, seem less significant than another statement known to the defense. Floyd Canada stated that he was with Jennings up to a few minutes before the murder occurred. He stated that he observed Jennings and a couple of other guys share four or five pitchers of beer at the Barleycorn and that Jennings was pretty loaded by around two o'clock. He then went with Jennings to the Booby Trap where they continued to drink until around 4:30 a.m. Jennings passed out in Canada's car on the way back to the Barleycorn. When they reached the Barleycorn, Jennings had trouble getting out of Canada's car and then staggered towards his own car. If defense counsel were truly interested in an intoxication defense, how could he ignore the Canada testimony and yet claim prejudice because he was not given the Slocum statement? The fact is that intoxication was never intended to be a part of Jennings' defense strategy. Defense counsel stated on more than one occasion, "The issue in this case is identity."
Defense requested and received a charge on intoxication not because it put on a case for intoxication, but because of the almost incidental testimony of Mrs. Danna, Jennings' mother, during the state's case. She testified that during the early morning hours of the day of the murder, she was awakened by Mrs. Music who told her that Jennings had come home drunk, almost knocked a picture off the wall, and went out again in *319 search of cigarettes. This was the defense's total intoxication defense.
Mrs. Music, who observed the "drunk" Jennings and reported it to her sister, was not called. Neither Canada (nor his deposition if he were unavailable) nor Schneider were offered for this defense. Donna Clement, who heard her aunt, Catherine Music, talking to Jennings at about 6:00 a.m. and asking him if he were drunk, was not called. Charles Clawson, who was with Jennings until 2:30 a.m. at the Barleycorn and was aware that Jennings asked Slocum to drive him home because he felt he was unable to drive, was not called. It is inconceivable that had the state disclosed Slocum's statement, which merely confirms that which the record reflects she would have said, the theory of the defense would have changed.
(Footnotes omitted.) We agree with the trial court's analysis of the effect the tape would have had on the trial. The trial court properly rejected this claim because there was not a reasonable probability that the tape would have caused a different outcome at the trial. See Duest v. Dugger, 555 So.2d 849 (Fla. 1990).
We do find merit in Jennings' next claim that he is entitled to certain portions of the state's files as public records under chapter 119, Florida Statutes (1989). In State v. Kokal, 562 So.2d 324, 327 (Fla. 1990), we held that
that portion of the state attorney's files which fall within the provisions of the Public Records Act are not exempt from disclosure because Kokal's conviction and sentence have become final. Thus, the state attorney should have provided Kokal with these records upon his request. If he had a doubt as to whether he was required to disclose a particular document, he should have furnished it in camera to the trial judge for a determination. Of course, the state attorney was not required to disclose his current file relating to the motion for postconviction relief because there is ongoing litigation with respect to those documents.
Therefore, in accordance with Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990), the two-year time limitation of rule 3.850 shall be extended for sixty days from the date of the disclosure solely for the purpose of providing Jennings with the time to file any new Brady claims that may arise from the disclosure of the files.
Jennings' next claim is that he received ineffective assistance of counsel during the guilt phase of his trial. He claims that his defense counsel failed to contact two witnesses who could have testified to his extreme intoxication. The trial court rejected this claim as follows:
Contrary to trial counsel's belated contention, the record reflects that the defense elected a strategy to obtain a not guilty verdict based on lack of identity. Since intoxication would not have been a defense to felony murder based on the underlying felony of sexual battery (an offense for which Jennings was also convicted), this appears to have been sound strategy. Having failed in his "lack of identity" defense, Jennings is now asking this court for relief not requested from the jury.
It cannot be said that the defense strategy to seek acquittal on the basis of insufficient identity rather than raise the defense of intoxication was negligence as a matter of law. After all, the most damning evidence, Jennings' confession, had been suppressed and the trial was being conducted over three hundred miles and seven years from the murder. On the other hand, the strongest evidence of intoxication, even if a viable defense, would have to be weighed against the mental alertness and physical dexterity evident in the planning and execution of this murder. It cannot be said that defense counsel failed to present an "intelligent and knowledgeable defense."
And the record refutes the contention that defense counsel failed to investigate appropriate witnesses. Aside from Slocum which was discussed earlier, lets look at the allegations:
(a) Defense counsel failed to contact Annis Music to see what knowledge she had about the level of Jennings' intoxication. *320 It should be noted that her present affidavit is given over ten years after the incident reported in the affidavit. Further, by placing herself in the living room at the time Jennings came home early in the morning on the date of the murder, she appears to be inconsistent with the testimony of her mother given shortly after the incident. And finally, her testimony merely confirms that given by Mrs. Music and which, by design, was not presented to the guilt jury.
(b) Defense counsel failed to contact Charles Clawson to determine his knowledge of the facts. Of course, defense counsel had the advantage of Clawson's deposition. He knew, for example, that Clawson had stated that although he could not remember the events too clearly or how much they were drinking, he "wouldn't say he [Jennings] had too much." And as to Jennings' condition when he last saw him at 2:30 a.m., "He looked like  I mean you could tell he had been drinking. I mean, he wasn't staggering, falling down, walking into bars, or anything like that. He could talk. He looked like he was just ." And concerning drugs and hard liquor: ".. . The only time I saw him all night was in the bar and he was just drinking beer."
Based on that record testimony, was defense counsel negligent in not pursuing Clawson as a witness? Should he have anticipated that, many years after the event, Clawson would "remember" the events more clearly  that Jennings was indeed drinking hard liquor and "was staggering, his eyes were glassy and he could not keep his head up straight"? Present counsel's statement that evidence in support of the intoxication defense was available but not discovered borders on misrepresentation. Such evidence as there was had been discovered and was well known, but was abandoned in favor of the identity defense.
(Footnotes omitted.) As we stated in Bertolotti v. State, 534 So.2d 386, 387 (Fla. 1988):
[I]n evaluating whether a lawyer's performance falls outside the wide range of professionally competent assistance "courts are required to (a) make every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time, and (b) indulge a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment with the burden on claimant to show otherwise." Quoting Blanco v. Wainwright, 507 So.2d 1377, 1381 (Fla. 1987).
Further, the existence of another theory of defense, which may be inconsistent with the chosen theory of defense, does not mean that counsel was ineffective. Engle v. Dugger, 576 So.2d 696 (Fla. 1991); Combs v. State, 525 So.2d 853 (Fla. 1988). We agree with the trial court that Jennings' counsel's performance was not deficient under the dictates of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and affirm the denial of this claim.
Next, we turn to Jennings' claim that his mental health experts gave inadequate evaluations because they were not provided with "the relevant and crucial background facts regarding Mr. Jennings' alcohol intake the night of the offense." The trial judge rejected this claim, stating that "[a]ll of the experts were well aware of the testimony of excessive alcohol consumption." He further referred to the testimony of two of the experts who testified as to how Jennings' excessive alcohol intake would affect their evaluation of his mental state on the night of the murder. Finally, the trial judge concluded:
Clearly the defense experts as well as the State's experts considered the testimony of excessive alcohol consumption in making their analyses. However, the State's experts, because of the ability to function displayed by Jennings in the planning and execution of the murder, were convinced that, in spite of such testimony, Jennings was not substantially impaired. The court finds the mental *321 evaluations were both complete and adequate.
We agree with the trial court that the mental health experts had adequate information as to Jennings' alcohol consumption the night of the murder and that the additional evidence of intoxication would have been merely cumulative. We also summarily reject the claim that they lacked adequate information on Jennings' history of alcohol problems.
Jennings' next claim is that he received ineffective assistance of counsel during the penalty phase of his trial because his counsel failed to investigate and present evidence of mitigation as to his alcohol consumption. The trial judge also rejected this claim as follows:
Likewise, the court again finds that defense counsel was aware of the evidence of intoxication in the penalty phase. And he presented evidence of intoxication to the penalty jury.
Mrs. Music: "... he just came in and when he saw me he staggered and fell against the wall. And I said, Bryan, be careful, and he said something like, oh, I am so drunk.
and
Russell Schneider: Jennings drank about a gallon and a half of beer up until 2:30 a.m. Jennings was still drinking when Schneider left.
These statements were from eye witnesses who observed his drinking experience and his physical condition just about three hours before and shortly after the murder. This coupled with the hypothetical question asked of the medical experts to the effect that Jennings consumed from two to five gallons of beer in about four to six hours constituted a good effort to convince the jury to find intoxication as a mitigating factor.
It is not negligent to fail to call everyone who may have information about an event. Once counsel puts on evidence sufficient, if believed by the jury, to establish his point, he need not call every witness whose testimony might bolster his position. Defense counsel, at the time, determined that the Schneider and Music testimony along with the hypothetical questions to the experts would be sufficient to establish the intoxication mitigating circumstance. He did not put on Canada or his deposition. The appropriate legal standard is not error-free representation, but "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Foster v. Dugger, 823 F.2d 402 (11th Cir.1987). Otherwise counsel could merely hold back a witness with cumulative knowledge about the facts and present him on the Rule 3.850 motion as evidence of ineffective assistance of counsel.
We agree that defense counsel's performance at the penalty stage was not ineffective under Strickland and affirm the denial of this claim.
Jennings also claims that the cold, calculated, and premeditated factor was unconstitutionally applied retroactively during sentencing. We have previously rejected this claim on its merits. Zeigler v. State, 580 So.2d 127 (Fla. 1991); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982).
The final claim that we will discuss on Jennings' motion for postconviction relief is his claim that the State Attorney for the Eighteenth Judicial Circuit, the office which prosecuted him at this trial, was a senior public defender in the Office of the Public Defender when that office represented him in 1982. It should be noted, however, that the public defender's office was permitted to withdraw from representation of Jennings during his 1982 prosecution. Moreover, Jennings did not move to disqualify the state attorney's office based on any alleged conflict prior to the trial upon which his current conviction rests. This claim is procedurally barred.
Jennings makes several other claims that we summarily reject because they are procedurally barred:
*322 (1) The state's mental health experts improperly relied on Jennings' unconstitutionally obtained confession.
(2) The jury was improperly instructed on the three murder counts and the appropriateness of the death penalty after Jennings was convicted on all three counts.
(3) Jennings' due process and confrontation rights were violated because he was not allowed to introduce prior sworn statements of a state witness during cross-examination.
(4) Jennings was prejudiced because the jury knew of his prior convictions for these crimes.
(5) The trial court allowed evidence seized in a warrantless arrest to be admitted at trial.
(6) The trial court failed to weigh independently aggravating and mitigating factors.
(7) The jury instruction for the heinous, atrocious, or cruel aggravating factor was unconstitutional under Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
(8) The jury instruction for the cold, calculated, and premeditated aggravating factor was unconstitutional under Maynard v. Cartwright.
(9) Jennings' death sentence rests upon an unconstitutional automatic aggravating circumstance.
(10) The prosecutor argued for the application of nonstatutory aggravating factors.
(11) The judge and jury failed to find mitigating circumstances established in the record, and the judge improperly instructed the jury on what it could consider in mitigation.
(12) The jury instructions at sentencing shifted the burden of proof to Jennings to prove that death was not the appropriate penalty.
(13) The jury instructions at sentencing diluted the jury's sense of responsibility for Jennings' sentence.
(14) The judge failed to instruct the jury that his instruction during the guilt phase to set aside sympathy and mercy did not apply during the sentencing phase.
(15) Victim impact evidence was improperly admitted. We also note that we do not find any ineffective assistance of trial counsel in the subject matter of these claims.
We reject without discussion Jennings' remaining claims, listed below, brought in his rule 3.850 motion:
(1) The state violated Brady by withholding a letter from Clarence Muszynski requesting the appointment of an attorney.
(2) The trial court erred because it did not hold an evidentiary hearing on the rule 3.850 motion.
Next, we turn to Jennings' petition for habeas corpus. The only claim which merits discussion[3] is Jennings' claim that the *323 jury was impermissibly influenced by victim impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). He claims that the state improperly introduced evidence of the victim's personal characteristics and the impact of her murder on her family through the testimony of her mother, father, and school principal.
We addressed this claim as to the father's and principal's testimony on direct appeal.
Point III concerns statements made by the victim's father and her school principal that on the day she was killed the child was going to be narrator at her school play because she had learned to read faster than her classmates. Appellant argues these statements should not have been admitted because they had no relevance and served only to play upon the jurors' sympathies. To the contrary, the testimony was relevant in that it tended to show that the victim was looking forward to her role and thus would not have left home willingly. Moreover, on this record, testimony of this nature could not have affected the outcome of appellant's trial.
Jennings, 512 So.2d at 172. We agree that this claim is procedurally barred because Booth was released two months before this Court released its decision in Jennings, 512 So.2d 169. However, we also note that any prejudice associated with this relevant testimony was not of the content or quality so as to require reversal under Booth or Gathers. See Valle v. State, 581 So.2d 40 (Fla. 1991); Bush v. Dugger, 579 So.2d 725 (Fla. Mar. 28, 1991). As to the mother's testimony, no appropriate objection was made to her testimony to preserve Booth-type error and, therefore, this claim is procedurally barred. Jackson v. Dugger, 547 So.2d 1197 (Fla. 1989). Further, the mother's testimony was relevant and did not violate Booth or Gathers.
Therefore, we deny Jennings' petition for a writ of habeas corpus. Further, we affirm the denial of all of his claims raised in his motion for postconviction relief except for his claim for public records under chapter 119. That claim is granted as discussed within this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Jennings' first convictions were vacated by this Court in Jennings v. State, 413 So.2d 24 (Fla. 1982). His next convictions were affirmed by this Court, Jennings v. State, 453 So.2d 1109 (Fla. 1984), but vacated by the United States Supreme Court in Jennings v. Florida, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985). This Court then remanded for the third trial. Jennings v. State, 473 So.2d 204 (Fla. 1985).
[2] The trial judge imposed the death penalty, finding: (1) the murder was heinous, atrocious, or cruel; (2) the murder was cold, calculated, and premeditated; and (3) the murder was committed during burglary, kidnapping, and rape.
[3] We summarily deny the following claims as procedurally barred because they either were raised or should have been raised on direct appeal:

(1) The jury instruction for the heinous, atrocious, or cruel aggravating factor was unconstitutional under Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
(2) The jury instruction for the cold, calculated, and premeditated aggravating factor was unconstitutional under Maynard v. Cartwright.
(3) The judge and jury failed to find mitigating circumstances that were established in the record and the judge improperly instructed the jury on what it could consider as mitigating evidence.
(4) The cold, calculated, and premeditated aggravating factor was unconstitutionally applied retroactively.
(5) Jennings' due process and confrontation rights were violated because he was not allowed to introduce prior sworn statements of a state witness during cross-examination.
(6) The jury instructions at sentencing shifted the burden of proof to Jennings to prove that death was not the appropriate penalty.
(7) The trial court failed to weigh independently aggravating and mitigating factors.
(8) The state's mental health experts improperly relied on Jennings' unconstitutionally obtained confession.
(9) The judge failed to instruct the jury that his instruction during the guilt phase to set aside sympathy and mercy did not apply during the sentencing phase.
(10) The trial court allowed evidence seized in a warrantless arrest to be admitted at trial.
(11) Jennings was prejudiced because the jury knew of his prior convictions for these crimes.
(12) Jennings' death sentence rests upon an unconstitutional automatic aggravating circumstance.
(13) The prosecutor argued for the application of nonstatutory aggravating factors.
(14) The jury instructions at sentencing diluted the jury's sense of responsibility for Jennings' sentence.
(15) The jury was improperly instructed on the three murder counts and the appropriateness of the death penalty after Jennings was convicted on all three counts.
We also deny the claims of ineffective assistance of counsel as they relate to the foregoing claims.