782 So.2d 853 (2001)
Bryan Fredrick JENNINGS, Appellant,
v.
STATE of Florida, Appellee.
No. SC93056.
Supreme Court of Florida.
March 22, 2001.
*855 Martin J. McClain, Brooklyn, NY, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Bryan Fredrick Jennings appeals an order entered by the trial court below pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
Appellant was tried and convicted (at his third trial) of first-degree murder, burglary, kidnapping and sexual battery, and was sentenced to death in accordance with the jury recommendation. This Court affirmed his convictions and sentence on direct appeal in Jennings v. State, 512 So.2d 169 (Fla.1987) (Jennings I).
Appellant subsequently sought postconviction relief, which was denied by the trial court. This Court affirmed the trial court's order in part, but also found merit in appellant's claim that he was entitled to certain portions of the State's files pursuant to chapter 119, Florida Statutes. Thus, the Court extended the time limitation in Florida Rule of Criminal Procedure 3.850 and remanded the case to provide appellant with time to file new Brady claims that might arise from the disclosure of files. See Jennings v. State, 583 So.2d 316, 319 (Fla.1991) (Jennings II). On October 30-31, 1997, the trial court held an evidentiary hearing. On March 19, 1998, the trial court denied appellant's motion for relief and this appeal followed.
The first issue is whether the trial court erred in denying relief based on appellant's Brady[1] and Strickland[2] claims. Appellant's Brady claims are not supported *856 by exculpatory evidence. Moreover, the Strickland claims are likewise unavailing.[3]
1. Prosecutor's Notes on Allen Kruger: The trial court properly found that the State did not violate Brady based on the recently revealed interview notes taken by a prosecutor who interviewed Allen Kruger who, in addition to Clarence Muszynski and Billy Crisco, testified that appellant confessed to the above crimes. The Unites States Supreme Court defined a Brady claim as follows:
There are three components of a true Brady violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.
Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Where evidence has been withheld, the ultimate test under Brady becomes whether the disclosed information is of such a nature and weight that "confidence in the outcome of the trial is undermined to the extent that there is a reasonable probability that had the information been disclosed to the defendant, the result of the proceeding would have been different." Young v. State, 739 So.2d 553, 559 (Fla.1999).
In the present case, appellant seeks relief under Brady based on the following quotation from the prosecutors's notes pursuant to the Kruger interview: "(doesn't recall [appellant] saying anything about age of V or molesting herafter reading state.could have.)" The excerpt is located towards the end of two pages of handwritten notes. The language pertains only to appellant having made statements relative to the victim's age and her molestation, and not Kruger's other statements regarding how he came forward with Jennings' incriminating statements regarding the murder, kidnapping and burglary. Moreover, the quote does not evidence any overreaching on the part of the State. Thus, the statement "after reading state. could have" is not exculpatory and does not undermine confidence in the outcome of the case.[4]
Appellant further argues that the notes provide Brady material relative to the consciousness of the victim:
[Defendant] said "I dropped her out of a window. She was laying there but not dead. I picked her up by her legs and slammed her down on the concrete. I picked her up and carried her to the river for the sharks, turtles and crabs. I held her head under water for 10 minutes."
The notation does not expressly say whether or not the victim was unconscious and, if so, at what point she lost consciousness. Furthermore, as the trial court found, the above quote is "substantially the same" as Kruger's trial testimony; thus, the notation does not constitute undisclosed exculpatory Brady material.
*857 Next, appellant argues that the note, "omitno agency proof," establishes that Muszynski was as agent of the State when he spoke with appellant about the crime, At the hearing, assistant state attorney Michael Hunt denied that Muszynski was a state agent:
No, sir, not at all. In fact, to the contrary.... [T]here's absolutely no proof or no evidence of any agency relationship between Mr. Muszinski [sic] and the prosecution or law enforcement regarding any witness, much less Mr. Kruger.
Moreover, trial defense counsel questioned Muszynki during a voir dire about a possible agency relationship. Muszynki stated that he initiated contact with the State and defense counsel queried:
Q: It is your testimony here that you were not approached by the State to act in the capacity of an agent or to obtain statements from [appellant] or any other person?
A: No, sir. He gave it to me because he wanted somebody to look out for him at the prison.
Q: Did you approach him first about it?
A: No, sir, he came to me.
Because the prosecutor testified that an agency relationship did not exist, Muszynski denied being recruited by the State, and appellant failed to establish an agency through any other evidence, the notation does not constitute exculpatory Brady material.
Appellant also claims that the notes undermine the credibility of Kruger based on the timing of when he contacted the authorities. The notes contain the following:
(NoteW[itness] came to light after Rick [Muszynski] told BCSO [Brevard County Sheriff's Office] of his presence)
Appellant asserts that the State's case is undermined because the order in which witnesses Kruger and Muszynski first spoke to the authorities is brought into question; thus, the note constitutes Brady impeachment evidence. However, the trial court found:
Mr. Hunt's testimony at the evidentiary hearing was that this was a parenthetical note to himself, not something conveyed to him by the witness. Further he testified that he was not initially involved in the investigation of the case and would have to rely upon the case reports but that "Mr. Kruger came forward voluntarily, at some point, independent of Mr. Muszinski [sic]." (See Exhibit "E", Evidentiary Hearing Testimony Michael Hunt, pgs. 278-290).
. . . .
How Kruger came forward or when Kruger came forward is not favorable evidence which was suppressed or would have changed the outcome of the trial. The parenthetical note of Michael Hunt appears to be an error on the part of Mr. Hunt; it was based solely on his review of previously disclosed case reports. The fact remains that Kruger came forward voluntarily, and all of the credible testimony shows that he came forward before Muszynski.[[5]]
*858 Because the notation regarding which witness contacted the State first was made by Hunt based on case reports and not on what Kruger told him, and because the appellant fails to establish the relevance of who contacted the State first, appellant has not established a reasonable probability that the result of the proceeding would have been different.
2. Judy Slocum's Taped Statement: Appellant's successive claim that the State violated Brady based on the prosecution's Slocum tape is procedurally barred because the issue was raised and denied in his prior rule 3.850 motion and appeal. See Jennings II, 583 So.2d at 319 (this Court affirmed the trial court's denial of relief pursuant to appellant's allegation of a Brady violation based on the Slocum tape); Mills v. State, 684 So.2d 801, 805 (Fla.1996) (finding Brady claim procedurally barred where defendant raised same claim in previous rule 3.850 motion). Because the issue is procedurally barred, the trial court properly denied relief.
3. Muszynski's Letter to the State Attorney: Appellant seeks relief based on a letter from Muszynski to the State Attorney. The claim is likewise barred since it was raised in appellant's prior rule 3.850 motion and his appeal. This Court held in Jennings II:
We reject without discussion Jennings' remaining claims, listed below, brought in his rule 3.850 motion:
(1) The state violated Brady by withholding a letter from Clarence Muszynski requesting the appointment of counsel.
583 So.2d at 322. Because appellant's successive claim regarding Muszynski's letter requesting counsel is procedurally barred, the trial court properly denied relief. See Mills, 684 So.2d at 805.[6]
4. Information Regarding Other Suspects: In order for an appellant to prevail on a Brady claim, the defendant must show, among other things, that there is a "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." Mills, 684 So.2d at 805 (citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Here, appellant fails to satisfy that burden. The trial court's order denying relief provides, in part:
It has been alleged that the defense could have used the information regarding these suspects in its defense; the evidence negates this contention. "If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other *859 person should be of such nature that it would be admissible if that person were on trial for the present offense." State v. Savino, 567 So.2d 892, 894 (Fla.1990). See also Crump v. State, 622 So.2d 963 (Fla.1993). The information contained in the notecards would not have been admissible.
Defense counsel, testifying at the evidentiary hearing on this matter, stated:
... with that one exception [the notecard referring to Debra Greg meeting a guy at the beach on 5/10/79 who had a gash on his leg] (See Exhibit "I", Notecard) none of the other field interrogation cards gave you enough or any substance to really relate it to this particular offense, and, when you have the circumstance of an identified person, because, you know, a couple of them did have identified persons, I run into the problem that this person does not have fingerprints on or near the house. I run into the problem that this person may well have an alibi, I don't know.
The relevance or actually the usefulness, I'll put it that way, to the defense [is that] ... it's [a] phantom suspect. It's notit gives me somebody I can argue did it, and you guys can't show that he didn't....
Even if the evidence would have been admissible, there is not a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.
Appellant's reliance on the forgoing evidence to create a "phantom suspect" rather than present admissible evidence that someone else committed the crime in question does not satisfy his burden of establishing a reasonable probability of a different result. See Bagley, 473 U.S. at 682, 105 S.Ct. 3375. See also Wright v. State, 581 So.2d 882, 883, 887 (Fla.1991) (affirming that "speculative" claim under Brady does not warrant relief). Thus, the trial court properly denied relief.
4. Annis Music: Appellant's claim of ineffective assistance[7] based on counsel's failure to present testimony of Annis Music regarding appellant's level of intoxication is procedurally barred since appellant raised this issue in his previous rule 3.850 motion and the appeal. See Jennings II, 583 So.2d at 319-20; Jones v. State, 591 So.2d 911, 913 (Fla.1991) ("Jones has already had a full and fair hearing on his claim of ineffectiveness of trial counsel. A defendant may not raise claims of ineffective assistance of counsel on a piecemeal basis by filing successive motions.").
Even if the claim was not procedurally barred, it still would not warrant relief. Appellant relies on statements that counsel was deficient in failing to utilize Music since she could have testified that *860 appellant was "very intoxicated," he "banged into walls" and "couldn't really talk," and that his condition may have been due to "more than alcohol." Appellant argues that this evidence clearly could have been used to undermine finding the CCP aggravator, and could have supported finding intoxication, which the State's experts found unsupported by the evidence. However, this Court rejected this claim in Jennings II, 583 So.2d at 318-19. The Court affirmed the trial court's denial of relief because evidence of appellant's intoxication on the night in question "was well known [at trial], but was abandoned in favor of the identity defense." Id. at 322; see Engle v. Dugger, 576 So.2d 696, 700 (Fla.1991) (holding that tactical decisions of trial counsel do not justify postconviction relief and that the existence of an additional defense theory does not mean counsel was ineffective). As to the sentencing phase, this Court affirmed the trial court's initial denial of relief in Jennings II, which denied appellant relief arising from his alleged intoxication, based on the finding that he was "not substantially impaired" as evidenced by his "ability to function" in executing the instant crimes. 583 So.2d at 320. Thus, the trial court properly denied relief.[8]
5. Drug Expert: Appellant's claim that his counsel was ineffective in failing to utilize a drug expert is procedurally barred because appellant claimed ineffective assistance of penalty-phase counsel in his prior rule 3.850 motion. Appellant argued that his mental health experts made inadequate evaluations since they were not provided relevant facts regarding his alcohol intake on the night in question. See Jennings II, 583 So.2d at 320. In that proceeding, this Court affirmed the trial court's denial of relief and quoted the trial court's finding:
Clearly the defense experts as well as the State's experts considered the testimony of excessive alcohol consumption in making their analyses. However, the State's experts, because of the ability to function displayed by Jennings in the planning and execution of the murder, were convinced that, in spite of such testimony, Jennings was not substantially impaired. The court finds the mental evaluations were both complete and adequate.
Jennings II, 583 So.2d at 320-21. Furthermore, since appellant previously alleged his use of LSD, any claim regarding his use thereof should have been raised in his first postconviction motion and is now procedurally barred. See Jones, 591 So.2d at 914.
6. Interview Notes Regarding Billy Crisco: Appellant's claim as to state attorney notes regarding Crisco, which were disclosed in the public records request, cannot constitute Brady material because the information in the notes was known by defense counsel though his deposition of Crisco. Appellant focuses his claim based on two provisions in the notes: (a) that appellant told Crisco that he "couldn't help it"; and (b) that the victim was rendered unconscious immediately. *861 Cross-examination of appellant's trial counsel by the State revealed:
Q. .... Is it your testimony that you didn't know the substance of what was in the notes, or is it your testimony that, for some strange reason, I didn't provide you my handwritten notes?
A. No, the testimony was that I believe I was reasonabl[y] familiar with the substance of the note. It appears to be a recitation of Mr. Crisco's testimony, and I recall deposing Mr. Crisco as he was called as a witness at the trial, as well.
I think I pointed out ... one or two areas that were curious, but I do not believe that I indicated that I didn't know the substance of them....
Q. Okay. Well, then, specifically it was referenced that Mr. Crisco said that [appellant] told him that he just couldn't help it[-i.e., that appellant could not help committing the crime]. Would you agree thatand I can show it to you if you wish, but in the first line of Page 6 of his depo he said, in fact, that he just couldn't help himself. He told you that in his deposition, did he not?
A. He did.
Q. I did not hide that from you, you were fully aware that Mr. Crisco was going to testify to that?
A. Yes, sir.
Q. That Becky was unconscious shortlyor at the time he through [sic] her out the window, he also told you that in his deposition, didn't he?
A. Yes.
Because the state attorney's notes of Crisco revealed information already known by defense counsel prior to trial, the Crisco notes cannot constitute Brady material.
Appellant raises a backup ineffective assistance claim based on Crisco, such that if the Court declines to find a Brady violation because Crisco's testimony was already possessed by appellant independent of the State's notes, then defense counsel was ineffective for failing to use the information during the penalty phase. However, this claim is successive to appellant's penalty-phase ineffectiveness claim in his prior rule 3.850 motion, which this Court denied in Jennings II, 583 So.2d at 320-21. See Pope v. State, 702 So.2d 221, 223 (Fla.1997) (explaining that successive ineffective assistance of counsel claim based on a different ground is properly barred absent an allegation of newly discovered evidence); Jones v. State, 591 So.2d at 913.
7. Kruger's Court Record: Appellant seeks relief based on the discovery that Kruger sought a psychological examination in his own prosecution in pursuit of the insanity defense. This claim is time-barred since Kruger's motion contesting his own sanity was filed in 1979 and appellant's third trial was in 1986; thus, postconviction relief based on this claim is barred by rule 3.850. Furthermore, seeking relief based on this motion exceeds the scope of the remand ordered in Jennings II, which was directed to public records in the State's possession, i.e., state attorney and law enforcement records that the State refused to disclose. Alternatively, the motion submitted by Kruger in his case was merely a form motion seeking an examination, and appellant has failed to submit in this case any follow-up orders or findings based on Kruger's motion that would actually evidence any mental incompetency. Thus, the trial court properly denied relief on this issue.
Overall, the cumulative effect of the alleged Brady violations does not establish Brady materiality. The notes concerning the Kruger interview do not undercut confidence in the verdict. Moreover, the Slocum tape, Muszynski letter, and the "other *862 suspects" claim do not require relief individually or collectively. See Way v. State, 760 So.2d 903 (Fla.2000) (explaining that ultimate question of whether suppressed evidence was material is a mixed question of law and fact subject to independent appellate review); Lightbourne v. State, 742 So.2d 238, 247-48 (Fla.1999) (requiring cumulative analysis of Brady material).
The second issue is whether the trial court erred in denying relief based on erroneous jury instructions as to the CCP and HAC aggravators. The trial court properly denied relief as to appellant's claims regarding the CCP and HAC instructions. First, the State's argument (based on the trial court's ruling) that appellant failed to preserve the error as to the CCP instruction is supported by the record. On direct appeal, appellant failed to specifically argue that the CCP instruction was unconstitutionally vague, even though he advanced the argument with respect to the HAC instruction. See Jackson v. State, 648 So.2d 85, 90 (Fla.1994) (holding that issue of unconstitutionally vague instruction relative to aggravating factor was properly preserved for postconviction review where the defendant objected to the vagueness at trial and raised the issue on direct appeal); see generally Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982)("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.").
Second, the trial court properly determined that both errors (CCP in the alternative) constitute harmless error. This Court has held that a CCP aggravator can stand where the facts of the case establish that the killing was CCP under any definition, even though the CCP instruction given to the jury was unconstitutionally vague. See Monlyn v. State, 705 So.2d 1, 5-6 (Fla.1997). Here, the facts found in the original sentencing order are as follows:
In the early morning hours of May 11, 1979, Rebecca Kunash was asleep in her bed. A nightlight had been left on in her room and her parents were asleep in another part of the house. The Defendant went to her window and saw Rebecca asleep. He forcibly removed the screen, opened the window, and climbed into her bedroom. He put his hand over her mouth, took her to his car and proceeded to an area near the Girard Street Canal on Merritt Island. He raped Rebecca, severely bruising and lacerating her vaginal area, using such force that he bruised his penis. In the course of events, he lifted Rebecca by her legs, brought her back over his head, and swung her like a sledge hammer onto the ground fracturing her skull and causing extensive damage to her brain. While she was still alive, Defendant took her into the canal and held her head under the water until she drowned. At the time of her death, Rebecca Kunash was six (6) years of age.
Jennings I, 512 So.2d at 175-76. In addition to the above facts, the State presented testimony that appellant located the victim in her bedroom, departed and went to his home, and then returned to the victim's house and committed the above acts. Based on the foregoing, there is no reasonable possibility that the CCP aggravator would not have been found.
With respect to the HAC instruction, this Court has found that a constitutionally vague HAC instruction may be found harmless where the facts of the murder support finding the aggravator beyond a reasonable doubt. See Doyle v. Singletary, 655 So.2d 1120, 1121 (Fla.1995) (explaining that error concerning constitutionally vague HAC instruction was subject *863 to harmless error analysis under State v. DiGuilio, 491 So.2d 1129 (Fla.1986)); Johnston v. Singletary, 640 So.2d 1102, 1104-05 (Fla.1994) (explaining that the "jury would have found Johnston's brutal stabbing and strangulation of the eighty-four-year-old victim, who undoubtedly suffered great terror and pain before she died, heinous, atrocious, or cruel, even with the limiting instruction"); but see Hitchcock v. State, 614 So.2d 483, 484 (Fla.1993) (vacating sentence based on unconstitutional HAC instructional error without conducting a harmless error analysis, on facts similar to those in the instant case). Here, the constitutionally vague pre-Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), HAC instruction constitutes harmless error. Muszynski testified that appellant told him that
he went back from where the woman was laying in bed, he went back to the little girl's bedroom. And he said he picked her up and then heI said, well, didn't the little girl come getbe woke up or anything. And he said, yeah, she woke up, but he said, I yoked her out. I said, what do you mean, you yoked her out? He said, I took my hand on her throat like this (indicating). And he said, I squeezed it, and I took her breath out.
And so then I said, I don't follow you. And he said, well, stand up, so I stood up, and he took his hand, like this, on my throat, and heyou can yoke a person out real easy.
. . . .
And then he said he took the little girl to the window, put her out like this (indicating) and dropped her. And I said, well, didn't she make any noise? And he said, no, man, he said, she hit the grass. And then he said he picked her uphe climbed out the window and picked her up. Then he said he went around the side of the house. Now the little girl is coming to .... She started to scream and make noise, and started to scratch on him, he said.
. . . .
... [H]e is out in front now, he had the little girl like this (indicating), what he done, he grabbed her by one leg, dropped her, grabbed the other leg, then he took her like this and flipped her over his back, brung [sic] her around from his back to her head, banging her head off the curb two times.
Based on Muszynski's testimony, appellant's act of rendering the victim unconscious after choking her in her bed until she lost consciousness is sufficient evidence to support finding the crime heinous, atrocious, or cruel. See Robertson v. State, 699 So.2d 1343, 1347 (1997) ("This Court consistently has found this aggravator to apply where, as here, a conscious victim is strangled."); Adams v. State, 412 So.2d 850, 857 (Fla.1982) ("The fear and emotional strain preceding a victim's almost instantaneous death may be considered as contributing to the heinous nature of the capital felony.... From defendant's statement we find the victim was `screaming' prior to death. A frightened eight-year-old girl being strangled by an adult man should certainly be described as heinous, atrocious, and cruel."). Accordingly, we find beyond a reasonable doubt that the HAC aggravator would have been found with a proper instruction.[9]
*864 Issue three is whether the trial court abused its discretion in denying appellant's request to interview jurors under rule 4-3.5(d)(4), Rules Regulating the Florida Bar. This issue is procedurally barred because it could have and should have been raised on direct appeal. See Brown v. State, 755 So.2d 616, 620 n. 4, 621 n. 7 (Fla.2000) (holding same issue to be procedurally barred for above-stated reason); Gaskin v. State, 737 So.2d 509, 512 n. 5, 513 n. 6 (Fla.1999) (same). Thus, the trial court properly denied relief.
Issue four is whether the trial court abused its discretion in denying access to particular public records under the attorney work product privilege. The trial court properly reviewed the pertinent documents in camera and determined that they were attorney work product. The trial court's order provides as follows:
After reviewing the records the court has separated them into the following categories:
A. Proposed Question File: These records contain questions only and are not associated with any answers. They have been placed in envelope A.
B. Interview Question File: The records reflect questions prepared for interview and were connected with some type of response. The questions themselves are contained in envelope B. The responses, in the form of the interviewer's handwritten notes which do not relate to the specific questions, are contained in envelope C. (It may be that some of the entries in envelope C may be reviews of depositions; if it is clear that the record is a review of a deposition, it will be found in envelope B).
C. Witness inventory and trial schedule; exhibit schedule; allocation of trial responsibilities; review of first and second trial transcripts; physical evidence correlation with witnesses; list of offense elements (by counts); time chronology of crime events; order of calling witnesses; proposed trial questions; memos relating to discussions with previous prosecutors; voir dire and witness outline; proposed instructions; research topics and law updatescontained in envelope D.
D. Copies of Pleadings: motion to strike, motion to suppress evidence contained in envelope E.
E. State (confession) of Defendant: Envelope F.
F. F.D.L.E. Arrest Report: RAUL QUINONESEnvelope G.

*865 G. Statement of Donna Climent: Envelope H.
The court finds that the following are not public records under the criteria established by [State v.] Kokal, [562 So.2d 324 (1990)] because they are not "intended as final evidence of the knowledge to be recorded:"
Envelopes A, B, C and D.
The court finds that Envelopes E, F, G and H are public records.
In order to be Brady material, the evidence "must be material either to guilt or to punishment or bad faith of the prosecution." Brady v. Maryland,.... While Envelope C does not contain public records, it is possible that the notes of witness interviews could contain Brady material.
It is, therefore, ORDERED that files C, E, F, G and H be made available to the defense....
Files A, B and D shall be sealed and remain sealed pending review by the supreme court.
(Footnote omitted.) Competent, substantial evidence supports the trial court's determination. See Scott v. Butterworth, 734 So.2d 391, 393 (Fla.1999) (holding that draft pleadings are not subject to public records disclosure) (citing Bryan v. Butterworth, 692 So.2d 878, 881 (Fla.1997) (holding that when competent, substantial evidence supports the trial court's ruling, this Court will not "second-guess the trial court on this matter")). Thus, the trial court's order should be affirmed.
The fifth issue is whether death by electrocution constitutes cruel and unusual punishment. However, this claim is moot pursuant to legislation establishing the option of death by lethal injection or electrocution. See Sims v. State, 754 So.2d 657, 664-65 (Fla.2000).
Based on the foregoing, we hereby affirm the trial court's denial of relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[3] In its argument to the trial court, filed in writing subsequent to the evidentiary hearing the State did not argue that appellant was barred from raising ineffective assistance claims rather than Brady claims.
[4] The trial court summarized the incriminating evidence as follows:

The evidence introduced at trial was that: the Defendant's fingerprints were found on the bedroom window; a shoe print that matched his shoes was found in the adjoining field; the Defendant confessed to three witnesses (Muszynski, Kruger, Crisco); the Defendant wrote a letter to Muszynski indicating he had confessed to Kruger; testimony that the defendant's clothes were wet that morninghad fallen in a canal; evidence of abrasions to the defendant's penis.
[5] The trial court cited the following evidence:

At the third trial, Muszynski testified that Kruger went to the State first. (See Exhibit "G", Trial TestimonyClarence Muszynski, pg. 679). Kruger's testimony was: "They [State Attorney's Office] didn't seek me out. I volunteered." (See Exhibit "H", Trial TestimonyAllen Kruger). Wayne Porter, formerly the case agent of the Brevard County Sheriff's [O]ffice assigned to this case, testified at the evidentiary hearing that, "I interviewed Kruger first, as I recall, and the case reports seem to reflect that. My report said that I interviewed Kruger on June the 21st of 1979, followed by another cell mate, and, then on the 25th, I again interviewed Kruger and Muszinski [sic]." (Exhibit "E").
[6] The letter does not constitute Brady material because it does not establish a reasonable probability of achieving a different result. The letter states:

Dear [State Attorney]:
I was interviewed and left a calling card by Wayne D. Porter, Investigator for your Office in reference to a murder case of a six year old child which had been sexually abused.
In order for me to be able to communicate with your office for any possible assistance you may require of me I would appreciate if you would have an attorney appointed for me so that I will not infringe on any of my Fifth Amendment rights, being a layman, and that all discussions would be handled through said attorney representing me.
Hoping this arrangements [sic] suits your purposes I remain,
Sincerely yours,
[signature]
Clarence Muszinki [sic]
Because the letter contains only a request for counsel in order to avoid incriminating himself, Muszynski's letter does not evidence that he was seeking (or that the State was offering) an improper benefit that would lead Muszynski to fabricate testimony. Thus, the letter does not constitute Brady material.
[7] A claim of ineffective assistance of counsel has two components:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish ineffectiveness, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. 2052. To prove prejudice the claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.
[8] Appellant's claim regarding Charles Patrick Clawson is procedurally barred since an ineffective assistance claim based on counsel's failure to call Clawson as a witness was raised and rejected in appellant's prior rule 3.850 motion and appeal. See Jennings II, 583 So.2d at 319-20; Jones, 591 So.2d at 913. Appellant's reliance on Clawson's statements regarding appellant's intoxication on the night in question is redundant of the statements of Slocum, Annis Music, Catherine Music and Floyd Canada, and does not support a Strickland violation for the same procedural and substantive reasons. For the foregoing reasons, the trial court properly denied appellant's parallel claims as to Catherine Music and Canada.
[9] Even if this aggravating factor were stricken, appellant would not be entitled to relief. Where an aggravating factor is stricken on appeal, the harmless error test is applied to determine whether there is no reasonable possibility that the error affected the sentence. See Johnston, 640 So.2d at 1105 ("Further, there were two other strong aggravators and no mitigation present. The error was harmless beyond a reasonable doubt."); Reaves v. State, 639 So.2d 1, 6 (Fla.1994) ("We agree with Reaves that the deputy's death from gunshot wounds was not heinous, atrocious, or cruel.... We find this error to be harmless, however, in view of the two other strong aggravating factors found and relatively weak mitigation. There is no possibility that the jury would have recommended or the judge would have imposed a lesser sentence.") (footnote omitted). In the instant case, if the HAC aggravator was stricken, appellant would have two remaining aggravators: the crime was committed while engaged in commission of a felony, and the murder was cold, calculated or premeditated. Furthermore, the trial court found no mitigating circumstances. In light of the two remaining aggravating factors, the complete absence of mitigation, and the brutal nature of the crime in which a six-year-old girl was abducted from her own home, raped and killed, the striking of the HAC aggravator would not result in reversible error since there is no reasonable possibility that appellant would have received a life sentence. See Johnston, 640 So.2d at 1105; Reaves, 639 So.2d at 6; see also Blanco v. State, 452 So.2d 520, 526 (Fla.1984) (regarding a proportionality analysis, this Court explained that "[w]here there are one or more valid aggravating factors that support a death sentence and no mitigating circumstances to weigh against the aggravating factors, death is presumed to be the appropriate penalty").