823 So.2d 727 (2002)
THE FLORIDA BAR, Complainant,
v.
Brent Allan ROSE, Respondent.
No. SC00-1792.
Supreme Court of Florida.
June 27, 2002.
*728 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL; and Thomas E. DeBerg, Assistant Staff Counsel, Tampa, FL, for Complainant.
Scott T. Orsini of Orsini & Rose Law Firm, P.A., St. Petersburg, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Brent Allan Rose. We have jurisdiction. See art. V, § 15, Fla. Const.
The Florida Bar filed a complaint against Brent Allan Rose alleging that he violated various Rules Regulating the Florida Bar in representing a client in a criminal case.

FACTS
After a hearing, the referee made the following findings of fact:
Rose was defending a client in a criminal case.[1] The referee found that Rose failed to report several incidents which allegedly occurred that would involve improper contact with jurors in the case. The referee specifically noted that he was "not entirely persuaded that each alleged incident of improper contact actually occurred." However, the referee found that, regardless, "Rose had a duty to report the allegations of jury tampering to the trial court after they were brought to his attention," and Rose failed to do so. The referee next found that Rose did not thoroughly interview approximately fifteen defense witnesses. Rose only briefly met with the witnesses as a group for approximately forty-five minutes on the day before trial. Rose instructed the witnesses to make notes as to the testimony they would provide, but he failed to collect the notes. The referee also found that during jury selection Rose referred to his client as a child molester and stated that the reason he represents child molesters is because he gets paid for it. Based on these findings of fact, the referee recommended that Rose be found guilty of three violations of rule 4-1.1 of the Rules Regulating the Florida Bar (a lawyer shall provide competent representation to a client). The referee noted that Rose's reference to his client as a child molester was subsequently used by the prosecutor in closing argument and that Rose did not object. The referee, however, did not recommend that Rose's failure to object be found a violation of rule 4-1.1.[2]
*729 As to discipline, the referee recommended a thirty-day suspension followed by one year of probation, during which Rose would complete thirty credit hours of continuing legal education in specified areas. Further, the referee recommended that costs be awarded to The Florida Bar in the amount of $3,902.85.
The Bar petitioned this Court to review the referee's report as to discipline, arguing that a ninety-one-day suspension, along with the other conditions recommended by the referee, is more appropriate. Rose cross-petitioned seeking review of the recommendations concerning the rule violations along with the recommended discipline.

ANALYSIS
First, Rose challenges whether the referee's finding of fact that he was informed of the alleged juror contacts is based on competent and substantial evidence, and whether the referee correctly concluded that Rose's failure to report such alleged contact to the trial court constitutes a violation of rule 4-1.1. This Court's review of such matters is limited, and if a referee's findings of fact and conclusions concerning guilt are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998).
According to the record, one witness testified that she saw prosecutors and prosecution witnesses talking in a smoking area outside the courthouse, and that jurors were also in the smoking area. She testified that she did not see anyone speak to the jurors, but that she advised Rose of the circumstances. A second witness also testified as to seeing prosecution witnesses talking with prosecutors outside the courthouse in the smoking area, approximately twenty feet from jurors, and that she informed Rose of the occurrence. A third witness testified concerning an incident in the smoking area very similar to that described by the other two witnesses, as well as an incident in which a member of the victims' family supposedly assisted a female juror into a van on a rainy day. This third witness testified, however, that she did not tell Rose about the first event and could not even recall telling him about the second event. This third witness also testified that, from a window on the second or third floor of the courthouse, she observed a person she believed to be a member of the victims' family speaking with two jurors outside in the smoking area. The third witness testified that she asked her husband to summon Rose to look from that window, but she had no idea whether Rose ever saw the alleged interaction. Finally, a fourth witness testified to seeing the victims' mother speak to some jurors in passing in the cafeteria area during lunch as the mother passed a table and that the mother briefly interacted with them for less than a minute. This fourth witness had no idea whatsoever as to words spoken or what was said, and she testified that she did not even advise Rose that this incident occurred. After reviewing this testimony in the record, we note that the referee's recommendation of guilt is based on a novel standard. The referee did not find that any improper juror contacts occurred,[3] but nonetheless recommended that Rose be found to have violated a duty *730 to report such allegations. Thus, under this recommendation, Rose would be in violation of the Rules Regulating the Florida Bar for failing to report that which the evidence did not establish had even occurred.
We simply cannot agree with the referee that the facts in this record establish a violation of rule 4-1.1. The testimony itself indicates that Rose was not informed of most of these alleged events. Further, we must note that merely because people involved in the trial were in an outdoor smoking area at the same time does not support the conclusion that improper juror contacts occurred or that a finding of incompetence is warranted. With regard to the standard the referee imposed upon Rose, we find that under this evidence Rose cannot be guilty of incompetence for failing to advise the trial judge of events that the referee found that he had not been persuaded even happened, especially considering many of the alleged events were not even brought to Rose's attention. Therefore, based on the facts in the record, we disapprove the referee's recommendation as to guilt with regard to the alleged improper juror contacts.
Second, we consider whether Rose violated rule 4-1.1 because he allegedly did not thoroughly interview certain witnesses. We conclude that testimony in the record supports the referee's findings of fact that Rose performed the described acts (i.e., interviewing approximately fifteen witnesses the day before trial). However, the determinative issue is whether Rose's conduct constitutes a violation of rule 4-1.1.
The Supreme Court of Arizona in In re Wolfram, 174 Ariz. 49, 847 P.2d 94, 100 (1993), considered charges of incompetence against a criminal defense attorney and noted "that some of Respondent's acts and omissions, if viewed independently of one another, are not objectionable and may be explained by legitimate lawyering and trial strategy." As mentioned here, the instant disciplinary action arose from representation rendered in a criminal case. In Florida Bar v. Sandstrom, 609 So.2d 583, 584 n. 1 (Fla.1992), this Court noted that "most cases of ineffective assistance of counsel do not rise to the level of a disciplinary violation." These two cases indicate that an attorney's conduct must be somewhat egregious to be considered incompetent and, therefore, a violation of rule 4-1.1. Also, Wolfram and Sandstrom reflect that when courts consider claims that an attorney's performance was deficient, the courts permit a certain amount of deference to an attorney's trial strategy or tactical decisions.
In Sandstrom, 609 So.2d at 583, this Court suspended an attorney for deficiencies in representation under the former Code of Professional Responsibility, finding that Sandstrom
failed to take any pretrial depositions; failed to conduct a proper investigation as related to evidence available to establish that the proximate cause of the wife's death was medical malpractice; failed to timely challenge the admission of evidence relating to a search of [defendant's] car trunk; failed to discover that a fence, surrounding the scene of the alleged crime and injurious to [defendant's] defense, was not erected until over a year after the alleged crime; failed to present a tape recording to impeach a prosecution witness; and failed to become familiar with or know the physical evidence in the case.
(Emphasis added.) Sandstrom was found to have performed deficiently in providing representation, based on numerous acts. Although one of those acts was a failure to conduct a proper investigation, the multiple errors in Sandstrom are significantly *731 more egregious than that demonstrated in this record with regard to Rose's alleged failure to interview these particular witnesses in the instant case. In contrast to Sandstrom, the instant record reflects that Rose engaged in numerous acts in preparation for trial. The testimony at the disciplinary hearing demonstrates that Rose prepared for trial by traveling to Ohio to depose the victims; repeatedly meeting with the defendant and his wife; offering various theories of defense to the defendant; viewing videotapes showing the defendant with the victims; consulting with a mental health professional about the videotapes; and attempting to obtain copies of reports from the victims' counselor. Rose did not need to spend more time with the approximately fifteen witnesses because the defendant's family had already provided information as to what the alleged witnesses would say. Rose actually used three or four of these witnesses at trial. Further, there is absolutely no indication in this record that these alleged witnesses had relevant and admissible evidence or what that evidence might have been.
Although Jennings v. State, 583 So.2d 316, 321 (Fla.1991), involved an analysis of alleged ineffective assistance of counsel, we held there that an attorney was not negligent for failing to present every witness who might have had information concerning an event. If conduct must be somewhat egregious to be considered incompetent and the lower threshold of ineffective assistance was not satisfied in Jennings, then, most assuredly, a similar situation in the present case of allegedly not sufficiently interviewing certain persons, whose testimony has not been shown to even be admissible or relevant and who would have basically testified to the same facts as other witnesses, should not result in a finding of incompetence here and the imposition of discipline.
Considering Sandstrom, Wolfram, and Jennings, as well as the totality of this record and the deference that must be accorded to an attorney's trial strategy or tactical decisions, we do not agree with the referee's recommended finding of a rule 4-1.1 violation based on Rose's alleged inadequacies with regard to the interview with certain witnesses.
Next, we examine whether Rose violated rule 4-1.1 by the manner in which he referred to his client, using the phrase "child molester," during voir dire. The record clearly supports the referee's factual finding that Rose used the phrase "child molester" in questioning during the jury selection process. Rose argues that he asked potential jurors, "Anybody who wants to ask me the question, `How can you defend child molesters?'" in a lighthearted manner but to make a very significant legal and factual point. Rose testified that he knew this type of issue would be on the minds of prospective jurors and that it was essential that he confront the subject and demonstrate that the presumption of innocence is of critical importance, no matter how terrible the crime allegedly committed. It is clear that jury selection is a dynamic process and counsel must confront the difficult issues to explore those concealed or repressed thoughts that may later surface to the detriment of one charged with a distasteful crime.
We must recognize that there are certain realities a trial lawyer must confront, especially in a case in which there are allegations of harm to children. In the instant case, Rose's client was charged with two counts of capital sexual battery and two counts of lewd and lascivious acts upon a child. Such cases are often highly emotional, and it is only natural for prospective jurors to have various feelings or questions concerning the case, the issues, the defendant, and counsel. In these sensitive *732 cases, lawyers must utilize various mechanisms to cause jurors to surface any preconceived views or opinions the jurors might have, and to force the jurors to confront their own preconceived notions. Further, an attorney needs to make the point in these highly emotional cases that a defendant is innocent until proven guilty, no matter what the charge and no matter how insidious the allegations. There are probably numerous ways for an attorney to challenge preconceived notions and make this point. The mechanism Rose selected was to confront the issue directly and to refer to his client in the common terms of the crime with which his client was charged. This record does not support a finding that the mechanism and approach Rose used during jury selection produces a violation of rule 4-1.1.[4] Therefore, we disapprove the referee's recommended finding of a rule 4-1.1 violation in connection with Rose's comment.
Because we find that this record does not support a finding of guilt for any violations of rule 4-1.1, we disapprove the referee's recommendation of a thirty-day suspension and conclude that no discipline or sanctions are warranted. Given our disapproval of the referee's recommendations as to guilt, we also decline to impose the Bar's costs on Rose.

CONCLUSION
Accordingly, we disapprove the referee's recommendations that Brent Allan Rose be found guilty of three violations of rule 4-1.1 and, therefore, no discipline or sanctions should be imposed on Rose, nor should he be responsible for the Bar's costs under these circumstances.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] The record shows that the client was charged with two counts of capital sexual battery and two counts of lewd and lascivious acts upon a child. There were two child victims in the case.
[2] The referee also recommended that Rose be found not guilty of violating rules 4-1.2(a) (a lawyer shall abide by a client's decisions concerning the objectives of representation) and 4-1.4(b) (a lawyer shall explain matters to the extent reasonably necessary to permit the client to make informed decisions). The Bar did not challenge the referee's recommendations of not guilty as to these rules. We approve the referee's recommendations as to these two rules without further discussion.
[3] The referee stated, "Although this Court is not entirely persuaded that each alleged incident of improper contact actually occurred, Mr. Rose had a duty to report the allegations of jury tampering to the trial court after they were brought to his attention, and failed to do so." (Emphasis added.) The Bar even notes that the "Referee did not find that improper contact occurred between jurors and witnesses."
[4] The Bar argues that Rose was incompetent when he failed to object to the state attorney's closing statement that Rose "spoke the truth when he told you... that he represents a child molester." In the referee's report, the referee noted that the prosecutor used Rose's comment during her closing argument and that Rose did not object, but the referee did not conclude that this conduct violated rule 4-1.1. We note that the Bar did not allege this violation in the complaint, so we do not address it in detail. See Florida Bar v. Vernell, 721 So.2d 705, 707 (Fla.1998) (attorneys must know the charges they face before disciplinary proceedings commence). However, it is clear that the failure to object to a single remark in the scope of a trial such as that confronting Rose does not produce a disciplinary violation for which sanctions should be imposed.