453 So.2d 1109 (1984)
Bryan F. JENNINGS, Appellant,
v.
STATE of Florida, Appellee.
No. 62600.
Supreme Court of Florida.
July 12, 1984.
*1111 James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for appellee.
OVERTON, Justice.
The appellant, Bryan Jennings, was convicted of the first-degree premeditated murder of a six-year-old girl. In accordance with the jury's advisory recommendation, the trial judge imposed the death sentence. Appellant was also convicted of kidnapping, sexual battery, burglary of an occupied dwelling and committing an assault therein, and aggravated battery. He was sentenced to consecutive life sentences for each of these offenses except the aggravated battery, for which no sentence was imposed. We have jurisdiction,[*] and we affirm the convictions, the sentence of death, and the sentences for the other offenses.
This appeal follows appellant's second trial for these offenses. In Jennings v. State, 413 So.2d 24 (Fla. 1982), this Court held that at appellant's trial he was deprived of the benefit of cross-examination of a vital, material witness because of an attorney-client conflict. We vacated appellant's convictions and sentences and remanded for a new trial. In that opinion we also held that a statement which appellant made to the police was admissible because the facts established a proper waiver of counsel.
We reiterate the relevant facts. On the morning of May 11, 1979, the victim's parents discovered that she was missing from the family's Brevard County home. Later that afternoon, the victim's nude body was found floating in a nearby canal. The autopsy revealed that she had been sexually assaulted, that her skull had been fractured, and that the cause of her death was asphyxiation by drowning. The police investigation at the child's home resulted in the discovery of latent fingerprints on the window sill of the victim's bedroom and a *1112 footprint in the sand outside the bedroom window.
On the same day as the murder, the appellant, a 20-year-old marine home on leave, was arrested on a traffic warrant and taken to the Brevard County jail. At 1:00 a.m. on May 12, he was awakened in his cell and taken by police to an interview room for questioning with regard to the girl's death. He initially told the officers that he wanted an attorney and that he was not involved in the crime. Later, after using the restroom, appellant indicated his willingness to talk to the officers without an attorney present. After substantial questioning, he admitted the crime although he denied intending to kill the girl. Appellant, in a tape-recorded statement played to the jury, told the police that he climbed through the window of the girl's bedroom, placed his hand over her nose and mouth until she lost consciousness, and put her in his car and drove to the nearby canal, where he sexually assaulted her. He stated that he then threw her, unconscious, into the canal. He denied hitting the victim in the head, however. Appellant drew maps for the officers, tracing his activities during the evening, and told them where he had hidden the clothes that he wore while committing the crime.
At trial, Allen Kruger, who was in the Brevard County jail after being convicted of second-degree murder, testified that while in jail appellant told him that he picked the girl up over his head and threw her down on the pavement and that he held her head under the water of the canal for ten minutes. The medical examiner testified that, although the death was due to drowning, the injuries to the head were sufficient in and of themselves to cause death and were consistent with being caused by her head's striking a solid surface. It was also established that the victim suffered a traumatic injury to her vagina. Evidence was presented that the fingerprints taken from the window sill of the victim's bedroom matched appellant's and that the footprint in the sand outside the window was similar in tread design to shoes belonging to appellant. Appellant introduced testimony which showed that he had been drinking heavily on the night of the murder. The jury found the defendant guilty of first-degree premeditated murder, two counts of first-degree felony murder (one based on kidnapping, the other on sexual battery), kidnapping, two counts of sexual battery, burglary of a dwelling and committing an assault therein, and aggravated battery.
At the penalty phase of his trial, appellant offered testimony of a psychiatrist, Dr. Michael Guttman, and a psychologist, Dr. Elizabeth McMahon. Dr. Guttman testified that appellant suffered from a long-term character and behavior disorder and was a sexually perverse individual. While he concluded that appellant was sane, Dr. Guttman testified that, based on appellant's psychological disorder and the history of having consumed a substantial amount of alcohol, appellant could not limit his conduct as a normal person would under similar circumstances. Dr. McMahon testified that, due to appellant's alcohol consumption and his mental disorders, appellant's ability to control his behavior was severely limited. She stated that appellant did not have control of his emotional impulses and completely lacked self-control of any sort. Both doctors agreed that appellant met the criteria for certification as a mentally-disordered sex offender under chapter 917, Florida Statutes (1977). Other testimony offered during the penalty phase by the appellant established that he was an illegitimate child and never knew his real father; that he had a history of psychiatric problems including voyeurism and transvestism; and that he was capable of helping others during a crisis and possessed some sensitivity.
In response to appellant's psychiatric evidence, the state offered the testimony of Dr. J. Lloyd Wilder. Dr. Wilder testified that although appellant had a character or personality disorder which is not easily cured, appellant did not suffer from any mental disease or defect. Further, Dr. Wilder stated that appellant's acts were deliberate, that he understood the nature of his *1113 acts, and that he was not a mentally-disordered sex offender.
By a 9-to-3 vote the jury returned an advisory recommendation that the appellant be sentenced to death.
In a separate hearing, the trial court denied appellant's request to be treated as a mentally-disordered sex offender, expressly relying on Dr. Wilder's testimony.
The trial judge imposed the death penalty, finding three aggravating and no mitigating circumstances. The aggravating circumstances found by the trial judge were: (1) that the murder was committed while appellant was engaged in the commission of a burglary, kidnapping, and rape; (2) that the murder was heinous, atrocious, and cruel; and (3) that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial judge found no mitigating circumstances. He expressly found that, at the time of the crime, appellant was not under the influence of extreme mental or emotional disturbance and that appellant's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law was not substantially impaired. In so finding, the trial judge again relied on the testimony of Dr. Wilder.
The trial judge imposed three consecutive life sentences on appellant for his convictions of kidnapping, one count of sexual battery, and burglary of an occupied dwelling and committing an assault therein. With regard to the second sexual battery charge of which appellant was found guilty, the trial judge determined that it was based on the same episode as the other sexual battery charge and he did not impose a sentence. The trial judge also did not impose a sentence for the aggravated battery conviction. Appellant has not contested these life sentences before this Court.

Guilt Phase
Appellant contends that his conviction should be vacated because the trial court erroneously (1) admitted appellant's confession into evidence; (2) admitted evidence obtained as a result of appellant's confession; (3) denied motions for judgment of acquittal of first-degree premeditated murder on the ground that there was insufficient evidence of premeditation; (4) failed to grant a mistrial due to improper argument by the prosecutor during the guilt phase; and (5) admitted three photographs of the victim.
With regard to the first and second points raised by appellant, we addressed, in his first appeal, the issue of "the admissibility of the statement Jennings made as a result of police interrogation and the evidence secured as a consequence thereof." 413 So.2d at 26. Although we noted our concern with some of the language in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), we concluded that the instant case was distinguishable from Edwards and that under the totality of the circumstances appellant's confession and the fruits of it were properly admitted by the trial court. We find nothing in either the record of this case or subsequent case law which requires us to change our ruling on the admissibility of appellant's confession and the evidence obtained as a result of the confession. Accordingly, we find appellant's points one and two to be without merit.
We also reject appellant's third point that the evidence was insufficient to establish premeditation. The evidence shows that appellant had more than enough time to form the intent to kill the victim and there is substantial competent evidence in the record that appellant was not so intoxicated that he could not form the specific intent to kill.
Appellant's fourth point is that the trial court erred in denying a motion for mistrial because of improper argument by the prosecutor. The motion arose from a remark to the jury in which the prosecutor compared appellant's right to use the telephone to call an attorney during his interrogation and the victim's right to live. Appellant contends that this remark was irrelevant and inflammatory. We agree that *1114 the remark was improper, but we do not find that the remark was so prejudicial that a mistrial was required. Considering the totality of the circumstances, we do not find reversible error. Again, we must caution prosecutors to confine their arguments to the evidence. See Teffeteller v. State, 439 So.2d 840 (Fla. 1983).
With regard to appellant's fifth contention, we reject the assertion that his trial was tainted by the admission of three photographs of the body of the victim. We find that the photographs were properly admitted as relevant to the issues tried in this cause.

Sentencing Phase
Appellant contends that his sentence should be vacated and that a new sentencing trial should be granted because (1) the trial court erred in failing to grant a motion for mistrial because a psychiatrist, in explaining appellant's case history, referred to criminal offenses committed by appellant when he was in the military service; (2) the trial court refused to grant his request for special jury instructions; (3) the trial court improperly instructed the jury that seven or more of their number was required to return a sentencing recommendation; (4) the trial court failed to certify appellant as a mentally-disordered sex offender; (5) the trial court improperly found as an aggravating circumstance that this murder was heinous, atrocious, and cruel; (6) the trial court erred in applying the aggravating circumstance that the murder was cold, calculated and premeditated; (7) the trial court failed to find mitigating circumstances established in the record; and (8) Florida's capital-sentencing statute is unconstitutional. Appellant's points three and eight merit no discussion. Each has been considered and rejected by this Court. See Rembert v. State, 445 So.2d 337 (Fla. 1984); Jackson v. State, 438 So.2d 4 (Fla. 1983); Harich v. State, 437 So.2d 1082 (Fla. 1983); Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980).
With regard to his first point, it is contended that although the appellant and the state stipulated that appellant would not rely on the mitigating circumstance of no prior significant criminal history, a state witness referred to crimes which appellant committed while in the military. The state called Dr. Wilder, a psychiatric expert witness who, in response to a question asking him the basis for his opinion that appellant was a sociopath, stated that his conclusion was based on his examination of appellant's case history which included references to crimes committed while appellant was in the military. Appellant's counsel moved for mistrial. The trial court agreed that the comment was improper, but denied the motion for mistrial and instead struck the expert witness's testimony and gave a curative instruction to the jury. Appellant contends that the curative instruction was insufficient because of the prejudice resulting from the expert witness's statement, which, appellant argues, merely drew greater attention to appellant's character. Under the circumstances of this case we disagree. It does not appear from the record that the expert witness's statement was intentionally elicited by the prosecution. Further, given the other matters concerning his character and background placed in evidence by the appellant, this statement did not rise to the level of prejudicial evidence which this Court found was improperly admitted in Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981). We find that the trial court's denial of the appellant's motion for mistrial was not prejudicial error.
In his second point, appellant argues that the trial court erred in refusing to grant his request for special jury instructions at the sentencing phase. Appellant contends that he was entitled to special jury instructions on the definition of the aggravating circumstance of "heinous, atrocious and cruel" and on the process of weighing aggravating and mitigating circumstances in determining the sentence to be imposed. The trial court's denial of these specially requested instructions was *1115 not error. The appropriate standard jury instructions were given by the trial judge, who included an instruction requested by appellant which stated that "the mitigating circumstances which you [the jury] may consider are unlimited. You may consider any evidence presented at trial or the sentencing proceeding in mitigation of the defendant's sentence." We find that no prejudice resulted to appellant from the jury instructions given by the trial court during the sentencing phase of appellant's trial.
In his fourth point, appellant argues that the trial court erred in failing to certify appellant as a mentally-disordered sex offender and place him in the custody of the Department of Health and Rehabilitative Services to be treated and sentenced later. On this issue, the trial judge considered medical testimony presented by both appellant and the state. The testimony was in conflict and the trial judge expressly relied on the testimony presented by the psychiatrist who testified for the state. There is substantial competent evidence in the record to support the finding of the trial judge.
Appellant's fifth and sixth points are that, in sentencing appellant to death, the trial court improperly applied the aggravating circumstances that the murder was "heinous, atrocious, and cruel," and that the murder was "committed in a cold, calculated, and premeditated manner." We disagree with the appellant that under the facts of this case and this Court's definition of "heinous, atrocious, and cruel," the trial court erred in finding this aggravating circumstance. We agree that the mindset or mental anguish of the victim is an important factor in determining whether the aggravating circumstance of heinous, atrocious, and cruel applies. It is not, however, the sole controlling factor as illustrated by our decisions in Proffitt v. State, 315 So.2d 461 (Fla. 1975), and Spenkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). As important is the totality of the circumstances of the incident and whether they reflect that this was a conscienceless, pitiless, and unnecessarily torturous crime that sets it apart from the norm of capital felonies. State v. Dixon, 283 So.2d 1 (Fla. 1973). We find that this case is similar to Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), which also involved the murder and sexual assault of a young girl who was kidnapped from her home during the night. We do not find that our recent decision in Herzog v. State, 439 So.2d 1372 (Fla. 1983), should apply. Under the totality of the circumstances, and applying our decisions to the facts in the instant case, we find that the trial court properly applied the aggravating circumstance of heinous, atrocious, and cruel.
We also find that the trial court properly applied the aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner. The evidence shows that appellant located his victim, left, and then returned a short time later to enter the victim's home through her bedroom window and take her from her bed. His subsequent conduct in brutally fracturing her skull and then drowning her in the manner previously described establishes the heightened premeditation required for finding this aggravating circumstance.
In point seven, appellant argues that the trial court erred in failing to find certain justifiable mitigating circumstances. We find that the record justifies the trial court's finding that appellant was not under the influence of extreme mental or emotional disturbance when he committed the murder. The record also supports the trial judge's finding that the appellant's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law was not impaired. Appellant also argues that the trial court should have found as mitigating circumstances his age, his military service, his being a mentally-disordered sex offender, his remorse for his crime, and his unstable family life. It was within the province of the trial court to decide, on the basis of the *1116 record in this case, whether these mitigating circumstances offset the aggravating circumstances which were established.
We have reviewed appellant's sentence and considered it in light of similar cases to determine its appropriateness and note that we have affirmed the imposition of the death sentence in cases involving similar murders of children in which the defendants were of youthful age. See Buford; Goode v. State, 365 So.2d 381 (Fla. 1978); cert. denied, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). We find no error in the imposition of the death penalty in this case.
For the reasons expressed, we affirm the appellant's convictions, the imposition of the death sentence, and the life sentences imposed for kidnapping, sexual battery, and burglary of a dwelling and committing an assault therein.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[*] Art. V, § 3(b)(1), Fla. Const.