ERVIN, Judge.
The Special Disability Trust Fund appeals an order of the judge of compensation claims (JCC) deciding that the industrial injury of the claimant, Claudean Lane, merged with her preexisting psychological disorder to create a greater overall impairment, resulting in permanent total disability, thereby justifying reimbursement to her employer, P.B. Newspaper, appellee. Because we agree that Lane’s histrionic personality disorder was not shown to be a permanent physical impairment, we reverse and remand, and do not reach appellant’s second issue.
Lane injured her hand at work on December 20,1992; thereafter she developed reflex sympathetic dystrophy (RSD), and entered a pain management program. Her psychiatrist diagnosed Lane as having histrionic personality disorder (HPD), which is characterized by highly emotional, dramatic, attention-seeking behavior, and rapid, dramatic mood shifts. He believed her disorder significantly contributed to her RSD, because her histrionic exaggeration of symptoms slowed her progress in the pain management program, resulting in a need for more treatment and a prolongation of her disability. The JCC concluded that Lane’s preexisting HPD had merged with her RSD to create a greater overall impairment, rendering her permanently and totally disabled. We disagree.
Section 440.49(2), Florida Statutes (1991), authorizes reimbursement of certain benefits to the employer when it is shown, among other things, that a claimant’s job-related permanent impairment has merged with a “preexisting permanent physical impairment” to cause permanent total disability. The definition of “permanent physical impairment” in section 440.49(2)(b)(l) is central to this case:
“Permanent physical impairment” means any permanent condition due to previous accident or disease or any congenital condition which is, or is likely to be, a hindrance or obstacle to employment, but not due to the natural aging process.
P.B. Newspaper failed to prove that Lane’s permanent condition resulted from an “accident or disease or any congenital condition.”[1] Dr. Extern testified that Lane’s HPD was preexisting, but never opined that it was congenital or the result of a prior accident or a disease. His reference to HPD was only as a “disorder,” never as a disease. We have not uncovered any cases in which a Florida court has decided these terms are synonymous. The current version of the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders (4th ed.1994) [hereinafter DSM-IV], does not list HPD, or any psychological disorder therein, as a disease. In its introduction, DSM-IV defines “mental disorder” as
a clinically significant behavioral or psychological syndrome or pattern that occurs in an individual and that is associated with present distress (e.g., a painful symptom) or disability (i.e., impairment in one or more important areas of functioning) or with a significantly increased risk of suffering death, pain, disability, or an important loss of freedom.... Whatever its original cause, it must currently be considered a manifestation of a behavioral, psychological, or biological dysfunction in the individual.
DSM-IV, at xxi-xxii (emphasis added). Thus, the American Psychiatric Association characterizes disorders as “syndromes” or “patterns” of conduct or emotions, and not as diseases.[2]
Although ease law provides little guidance on this point, references have been made in cases to testimony wherein experts distinguish between the terms “mental disorder” and “mental disease.” See, e.g., Long v. *1228 State, 610 So.2d 1268, 1272 (Fla.1992) (affirming death sentence, noting that state’s mental health expert testified during guilt phase in regard to defendant’s insanity defense, that although defendant “did suffer from a severe antisocial personality disorder, it was his opinion that Long did not suffer from a mental illness or disease”); Jennings v. State, 453 So.2d 1109, 1112 (Fla.1984) (affirming death sentence, noting that state’s psychiatric expert in penalty phase testified that although appellant “had a character or personality disorder which is not easily cured, appellant did not suffer from any mental disease or defect”), cert, granted, judgment vacated on other grounds, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985); Ganson v. Department of Admin., 554 So.2d 516, 519 (Fla. 1st DCA 1989) (in her final order, agency secretary found, quoting psychiatrist, that appellant’s depression fell into one category of mental disorders associated with inability to adapt to environment, rather than the other category associated with brain disease).
Because the employer failed to prove that Lane’s personality disorder was due to an accident, disease or congenital condition, we reverse the final order and remand with directions to the JCC to deny its claim for reimbursement.
REVERSED and REMANDED.
BARFIELD, C.J., and KAHN, J., concur.

. Although this was not the Fund's primary focus on appeal, appellant did raise it both below and on appeal.

. In Johnson v. Singletary, 612 So.2d 575, 578 n. 5 (Fla. 1993) (emphasis added), the court stated in a footnote that DSM-III, published in 1980, “sets forth objective standards for diagnosing mental disease." There is no discussion or explanation for this conclusion.