# Supreme Court of Florida

_____

No. SC2025-1642

_____

**BRYAN FREDRICK JENNINGS,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

_____

No. SC2025-1686

_____

**BRYAN FREDRICK JENNINGS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2025-1687

_____

**BRYAN FREDRICK JENNINGS,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

November 6, 2025

PER CURIAM.

Bryan Fredrick Jennings was sentenced to death for the 1979 murder of six-year-old Rebecca Kunash.  On October 10, 2025, Governor Ron DeSantis signed a death warrant scheduling Jennings's execution for November 13, 2025.  Jennings unsuccessfully sought relief in the circuit court and now appeals. We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.  We affirm. We deny Jennings's concurrent motion to vacate the death warrant or stay the execution.  We deny Jennings's petition seeking review of the nonfinal order from the lower court denying his motion to vacate the death warrant and stay the execution.  Finally, we deny his habeas petition, *see id.* § 3(b)(9).

**I**

We have retold the facts that led to Jennings's death sentence time and again.  *See Jennings v. State* (*Jennings I*), 413 So. 2d 24, 25 (Fla. 1982); *Jennings v. State* (*Jennings II*), 453 So. 2d 1109, 1111-12 (Fla. 1984); *Jennings v. State* (*Jennings IV*), 512 So. 2d

169, 175-76 (Fla. 1987); *Jennings v. State* (*Jennings V*), 583 So. 2d 316, 317 (Fla. 1991); *Jennings v. State* (*Jennings VII*), 782 So. 2d 853, 862 (Fla. 2001); *Jennings v. State* (*Jennings X*), 192 So. 3d 38 (Fla. 2015) (table); *Jennings v. State* (*Jennings XI*), 265 So. 3d 460, 461 (Fla. 2018). We recount them here briefly to give context to our discussion.

In the early morning hours of May 11, 1979, Rebecca Kunash was asleep in her family home. Jennings, then twenty years old and on leave from the Marine Corps, dislodged the screen from her window and climbed into her bedroom. He covered her mouth, took her to his car, and drove to an area near the Girard Street Canal on Merritt Island. There, he raped Rebecca, swung her by her legs to the ground with such force that she fractured her skull, and drowned her while she was still alive. Her parents, who were asleep in another part of the house when Jennings broke in, woke up to find Rebecca missing. Later that afternoon, Rebecca's body was found in the water. She suffered extensive damage to her brain and bruising and lacerations to her vaginal area. Rebecca was six years old.

Later that day, Jennings was arrested on a traffic warrant and taken to the Brevard County jail. Investigation revealed that an unknown man matching Jennings's description had been seen in the Kunash family's neighborhood around the time of Rebecca's abduction, that Jennings's shoes matched footprints found at the family's home, that his latent fingerprints were found on Rebecca's windowsill, and that he had returned home on the night of the murder with his clothes and hair wet.

Jennings was tried and convicted for these crimes three times. Twice we reversed. *See Jennings I*, 413 So. 2d 24 (reversed and remanded due to defense counsel's failure to cross-examine a critical witness); *Jennings v. State* (*Jennings III*), 473 So. 2d 204 (Fla. 1985) (reversed and remanded in light of the United States Supreme Court's decisions in *Edwards v. Arizona,* 451 U.S. 477 (1981), *Shea v. Louisiana,* 470 U.S. 51 (1985), and *Smith v. Illinois,* 469 U.S. 91 (1984)); *Jennings IV*, 512 So. 2d 169 (conviction and death sentence affirmed).

In 1986, after his third and final trial, Jennings was convicted of first-degree murder, two counts of first-degree felony murder, kidnapping with intent to commit sexual battery, sexual battery,

and burglary.  *Jennings IV*, 512 So. 2d at 171.  After the penalty

phase, the jury recommended he be sentenced to death by a vote of

11-1.  The trial court agreed and imposed the death sentence on the

charge of first-degree murder.  In doing so, the judge found the

following aggravating factors: (1) the murder was committed while

Jennings was engaged in the commission of, or flight after

committing, the crimes of burglary, kidnapping, and rape; (2) the

murder was especially heinous, atrocious, or cruel; and (3) the

murder was committed in a cold, calculated, and premeditated

manner without any pretense of moral or legal justification.  *Id.* at

176.  We held that the trial court committed no error in finding the

absence of any statutory or nonstatutory mitigating circumstances.

*Id.*  On direct appeal, this Court affirmed Jennings's conviction and

death sentence.[1]  *Id.*  The conviction and sentence became final

---

1.  Jennings raised the following issues on direct appeal: (1) application of the "fruit of the poisonous tree" doctrine required the suppression of certain photographs, showing abrasions on Jennings's penis, taken as a result of an illegally obtained confession; (2) sworn motions containing prior inconsistent statements of a State witness were admissible and the court erred in sustaining the State's objection to their introduction; (3) statement by the victim's father that the victim was going to be narrator at her school play on the day she was killed was not relevant; (4) the trial court failed to suppress items seized as a

when the United States Supreme Court denied his petition for writ of certiorari on February 22, 1988. *Jennings v. Florida* (*Jennings XII*), 484 U.S. 1079 (1988). Over the next four decades, Jennings unsuccessfully sought postconviction relief in both state and federal court.

_____

result of a warrantless arrest; (5) photographs of the victim should not have been admitted and were so inflammatory that their potential prejudice outweighed their slight probative value; (6) a prosecutor's comment during voir dire alleged to refer to the failure of Jennings to testify; (7) a letter written by Jennings was improperly admitted; (8) failure to modify the standard jury instructions; (9) the trial court impermissibly replaced a guilt phase juror for the penalty phase after the juror explained, after already being sworn, that she had not been completely candid about her feelings concerning the death penalty; (10) the trial court improperly overruled an objection to the prosecutor's argument during the penalty phase; (11) knowledge by three jurors between the guilt and penalty phases that Jennings had been tried before for the same crimes deprived him of his constitutional right to a fair trial on the issue of his penalty; (12) an alternate juror leaving the courtroom at the same time as the jury panel when it retired to deliberate for the penalty phase tainted the jury to the extent that he was denied a fair trial; (13) the trial court's refusal to give Jennings's requested jury instruction at the penalty phase; (14) the trial judge erred in failing to certify Jennings as a mentally disordered sex offender; (15) the death penalty was imposed upon inappropriate aggravating circumstances and certain mitigating circumstances should have been found; and (16) the Florida Capital Sentencing Statute is unconstitutional on its face and as applied.

In state court, Jennings filed five postconviction motions for relief under Florida Rules of Criminal Procedure 3.850 and 3.851. *See Jennings V*, 583 So. 2d 316 (affirming the circuit court's denial of Jennings's initial rule 3.850 motion but granting Jennings's request for certain portions of the State's files as public records under chapter 119, Florida Statutes (1989)); *Jennings VII*, 782 So. 2d 853 (affirming the circuit court's denial of Jennings's remanded initial rule 3.850 postconviction motion); *Jennings v. State* (*Jennings VIII*), 36 So. 3d 84 (Fla. 2010) (table) (affirming the circuit court's denial of Jennings's first successive rule 3.851 motion for postconviction relief); *Jennings v. State* (*Jennings IX*), 91 So. 3d 132 (Fla. 2012) (table) (affirming the circuit court's denial of Jennings's second successive rule 3.851 motion for postconviction relief but allowing thirty days to file a successive postconviction motion raising specific claims); *Jennings X*, 192 So. 3d 38 (affirming the circuit court's denial of Jennings's third successive rule 3.851 motion for postconviction relief); *Jennings XI*, 265 So. 3d 460 (holding that *Hurst*[2] did not apply retroactively to Jennings's

---

2. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016) (holding that before a trial court may consider imposing the death penalty, all

- 7 -

sentence of death and affirming the circuit court's denial of Jennings's fourth successive rule 3.851 motion for postconviction relief).

Additionally, Jennings sought state habeas relief. *See Jennings V*, 583 So. 2d 316 (denying Jennings's petition for a writ of habeas corpus). And related to this Court's remand in *Jennings V*, Jennings appealed the circuit court's order for the disclosure of some, but not all, of the public records Jennings requested; this Court approved that order. *Jennings v. State* (*Jennings VI*), 626 So. 2d 1324 (Fla. 1993) (relying on *Parole Commission v. Lockett*, 620 So. 2d 153 (Fla. 1993), to hold that the Parole Commission was not required to release clemency files pursuant to the Public Records Act because executive clemency power is independent of both the legislature and the judiciary).

In federal court, Jennings first petitioned for a writ of certiorari following his initial unsuccessful rule 3.850 postconviction motion.

_____

critical findings must be found unanimously by the jury), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020) (holding only the existence of an aggravating circumstance qualifies as an element, and thus requires a unanimous jury finding); *see Hurst v. Florida*, 577 U.S. 92 (2016).

In 2002, the United States Supreme Court denied certiorari review. *Jennings v. Florida* (*Jennings XIII*), 534 U.S. 1096 (2002). Later, he petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 2254. The Northern District denied the petition and the United States Court of Appeals for the Eleventh Circuit affirmed the denial of habeas relief. *Jennings v. Crosby* (*Jennings XIV*), 392 F. Supp. 2d 1312 (N.D. Fla. 2005) (denying relief on sixteen claims raised in Jennings's first federal habeas petition); *Jennings v. McDonough* (*Jennings XV*), 490 F.3d 1230 (11th Cir. 2007) (affirming the district court's denial of habeas relief). In 2008, the United States Supreme Court again denied certiorari review, this time relating to the Eleventh Circuit's decision in *Jennings XIV*. *Jennings v. McNeil* (*Jennings XVI*), 552 U.S. 1298 (2008). After Jennings's second successive postconviction motion was denied (*Jennings IX*), the United States Supreme Court again denied certiorari review. *Jennings v. Florida* (*Jennings XVII*), 568 U.S. 1100 (2013). In 2016, following his third successive rule 3.851 motion (*Jennings X*), the United States Supreme Court again denied certiorari review. *Jennings v. Florida* (*Jennings XVIII*), 580 U.S. 857 (2016). In 2019,

after Jennings's unsuccessful fourth successive rule 3.851 motion (*Jennings XI*), the United States Supreme Court denied certiorari review. *Jennings v. Florida* (*Jennings XIX*), 587 U.S. 990 (2019). Jennings filed a second federal habeas petition under 28 U.S.C. § 2254. The Northern District dismissed his successive petition. The Eleventh Circuit affirmed the district court's dismissal. *Jennings v. Sec'y, Fla. Dep't of Corr.* (*Jennings XX*), 108 F.4th 1299 (11th Cir. 2024). On March 31, 2025, the United States Supreme Court denied Jennings's petition for a writ of certiorari related to that successive federal habeas petition. *Jennings v. Dixon* (*Jennings XXI*), 145 S. Ct. 1472 (2025).

Governor Ron DeSantis signed Jennings's death warrant on October 10, 2025, scheduling Jennings's execution for November 13, 2025. That same day, the State moved to have Capital Collateral Regional Counsel—Middle Region (CCRC-M) appointed as postconviction counsel for Jennings, noting that he required state collateral counsel during the warrant proceedings. On October 12, 2025, CCRC-M filed a limited notice of appearance alongside Jennings's motion to vacate the death warrant or alternatively to stay the warrant proceedings. On October 13, 2025,

- 10 -

the Circuit Court for the Eighteenth Judicial Circuit Court, in and for Brevard County, appointed CCRC-M as postconviction counsel, overruling CCRC-M's request to be appointed in a limited capacity. On October 16, 2025, the circuit court entered an order denying Jennings's motion to vacate the death warrant or alternatively to stay the warrant proceedings. On October 18, 2025, Jennings petitioned this Court to review the circuit court's nonfinal order denying his motion to vacate the warrant or stay the execution proceedings.

On October 21, 2025, Jennings filed his fifth successive motion for postconviction relief. He raised three claims: (1) the determination that executive clemency is not appropriate based on Jennings's clemency denial in 1989 violates his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions in the Florida Constitution; (2) the post-warrant appointment of CCRC-M and failure to stay the proceedings render the warrant proceedings invalid and in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and the corresponding provisions of the Florida Constitution; and (3) Florida's capital sentencing scheme violates

the Eighth and Fourteenth Amendments because it lacks essential safeguards against arbitrary and capricious imposition of the death penalty. The circuit court denied relief on all claims on October 28, 2025. The circuit court also denied Jennings's request to stay the execution.

Jennings now appeals the denial of his postconviction motion, raising three arguments. He also moves for a stay of execution and petitions for a writ of habeas corpus.

**II**

We have consistently said:

> Summary denial of a successive postconviction motion is appropriate if the motion, files, and records in the case conclusively show that the movant is entitled to no relief. We review the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

*Zakrzewski v. State,* 415 So. 3d 203, 208 (Fla.) (quoting *Tanzi v. State,* 407 So. 3d 385, 390 (Fla. 2025)), *cert. denied,* No. 25-5194, 2025 WL 2155601 (U.S. July 30, 2025). Applying this standard, we affirm the circuit court's summary denial of Jennings's fifth successive postconviction motion.

## A

Jennings first claims that his executive clemency determination violates his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution because his appeal for clemency was denied in 1989—thirty-six years ago.

This claim is untimely and procedurally barred. "Claims raised pursuant to rule 3.851 must meet either the timeliness requirements provided in section (d)(1) or the exceptions provided in section (d)(2)." *Ferguson v. State*, 101 So. 3d 362, 366 (Fla. 2012) (rejecting defendant's clemency-related claim as untimely when he could have raised it earlier). Jennings does neither. Instead, Jennings raises this claim for the first time thirty-six years after his clemency determination and thirty-seven years after his conviction and sentence became final in 1988. Also, in 2016, the State filed its notice of finality with the Clerk of this Court pursuant to rule 3.851(j), acknowledging that Jennings had completed his direct appeal, initial postconviction proceeding in state court, and habeas corpus proceeding and subsequent appeal in federal court. *See* Attorney General Notification to Clerk of the Florida Supreme Court,

*Jennings v. State*, No. SC1960-68835 (Fla. Oct. 14, 2016). So "in addition to the thirty-[seven] years of notice since the imposition of his death sentence[], [Jennings] has been on notice for nearly [nine] years that he is 'warrant-eligible,' meaning 'the [G]overnor could sign a warrant for his execution.'" *Jones v. State*, No. SC2025-1422, 2025 WL 2717027, at *4 (Fla. Sept. 24, 2025) (last alteration in original) (quoting *Silvia v. State*, 228 So. 3d 1144, 1146 (Fla. 2013)), *cert. denied*, No. 25-5745, 2025 WL 2775490 (U.S. Sept. 30, 2025).

Jennings has not demonstrated that any exception excuses his untimeliness under rule 3.851(d)(2). He asserts that either there are new facts which were unknowable before now or that he has good cause for failing to assert this claim in a prior motion. Both are false. The plethora of supposedly new facts on which he relies are either public knowledge or were known to him since 1989. Also, he has no good cause for failing to raise this claim earlier because he acknowledges in his brief that he "could have feasibly reapplied for clemency seven (7) times," but he did not.[3] For these

---

3. To the extent that Jennings is claiming that his clemency counsel was ineffective, the circuit court correctly found that

- 14 -

same reasons, Jennings's clemency claim is also procedurally barred under rule 3.851(e)(2).

In any event, this claim is meritless. On many occasions, this Court has rejected similar challenges to Florida's clemency process. The Florida Constitution vests the power of clemency in the executive branch. *See* art. IV, § 8(a), Fla. Const. We repeat that "[t]he clemency process in Florida derives solely from the Florida Constitution and we have recognized that the people of the State of Florida have vested 'sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace.' " *Zakrzewski*, 415 So. 3d at 211 (quoting *Carroll v. State*, 114 So. 3d 883, 888 (Fla. 2013)).

Moreover, "[n]o specific procedures are mandated in clemency proceedings." *Id.* And "[i]n *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998), five justices of the United States Supreme

---

Jennings has no constitutional right to raise such a claim. *See Rogers v. State*, 409 So. 3d 1257, 1264 (Fla.) ("[Defendant's claims] are claims of ineffective assistance of postconviction counsel, to which he acknowledges he has no constitutional right in Florida." (citing *Zack v. State*, 911 So. 2d 1190, 1203 (Fla. 2005))), *cert. denied*, 145 S. Ct. 2695 (2025).

Court concluded that some minimal procedural due process requirements should apply to clemency proceedings. But none of the opinions in that case required any specific procedures or criteria to guide the executive's signing of warrants for death-sentenced inmates." *Marek v. State*, 14 So. 3d 985, 998 (Fla. 2009). Thus, "we do not second-guess the executive branch in matters of clemency in capital cases." *Zakrzewski*, 415 So. 3d at 211.

Jennings argues that the thirty-six-year time lapse between his clemency proceeding and the signing of his death warrant makes his clemency determination inadequate as an arbitrary denial. But this Court previously "rejected the argument that a long time lapse between a defendant's clemency proceeding and the signing of his death warrant renders the clemency process inadequate or entitles the defendant to a second proceeding." *Pardo v. State*, 108 So. 3d 558, 568 (Fla. 2012); *see also Bundy v. State*, 497 So. 2d 1209, 1211 (Fla. 1986) ("We cannot say that the executive branch was required to go through the motions of holding a second proceeding when it could well have properly determined in the first that appellant was not and never would be a likely candidate for executive clemency."). It bears repeating that in the

thirty-six years since Jennings's clemency denial, he could have, but did not, reapply.

Jennings argues that because his clemency was denied before any of his postconviction proceedings, his clemency determination did not provide a "fail-safe in our criminal justice system" as envisioned in *Harbison v. Bell*, 556 U.S. 180, 192 (2009).[4] In *Johnston v. State*, when the defendant argued that his clemency proceeding "was inadequate because it was held before the postconviction proceedings," this Court concluded:

> [T]he clemency system in Florida performed as intended in providing a "fail safe" for [the defendant]. He was given a full clemency hearing in 1987 at which he was represented by counsel. When the death warrant was signed on April 20, 2009, it stated that "it has been determined that Executive Clemency, as authorized by Article IV, Section 8(a), Florida Constitution, is not appropriate."

27 So. 3d 11, 24 (Fla. 2010).

Here, as Jennings's postconviction motion in the circuit court acknowledged, he was represented by counsel at his 1988 clemency

---

4. In *Harbison*, the United States Supreme Court recognized that "[f]ar from regarding clemency as a matter of mercy alone, we have called it 'the "fail safe" in our criminal justice system.' " 556 U.S. at 192 (quoting *Herrera v. Collins*, 506 U.S. 390, 415 (1993)).

proceeding. When his death warrant was signed on October 10, 2025, it stated that "executive clemency for BRYAN FREDRICK JENNINGS, as authorized by Article VI, Section 8(a), of the Florida Constitution, was considered pursuant to the Rules of Executive Clemency, and it has been determined that executive clemency is not appropriate." So as in *Johnston*, the clemency process here performed as intended and Jennings's arguments to the contrary are without merit. *See also Valle v. State*, 70 So. 3d 530, 551 (Fla. 2011) (rejecting defendant's claim that his clemency proceeding did not serve as a fail-safe when it was done before his postconviction proceedings).[5]

Jennings also contends that, based on developments since 1989, there may be additional mitigation to present at an updated clemency proceeding. However, this Court has "previously rejected

---

5. In support of this fail-safe argument, Jennings relies on an appendix of clemency letters in his initial brief to claim that the Governor treated other similarly situated individuals differently than him. These documents were not submitted to the circuit court and cannot be considered here. *See Gudinas v. State*, 412 So. 3d 701, 708 n.5 (Fla.) ("We decline to consider materials that were not presented to and considered by the circuit court."), *cert. denied*, 145 S. Ct. 2833 (2025). Regardless, as we have said, Jennings's fail-safe argument is meritless.

the argument that a defendant is entitled to present a full accounting of mitigation evidence as part of the clemency process," much less a second clemency proceeding to present purportedly developed mitigation. *Pardo*, 108 So. 3d at 568 (citations omitted); *see also Dailey v. State*, 283 So. 3d 782, 788 (Fla. 2019) ("[T]o the extent [the defendant] asserts that his execution would be arbitrary because he was not granted an additional clemency proceeding at which to present newly discovered evidence, his claim is foreclosed by our caselaw." (citations omitted)).

We affirm the circuit court's denial of Jennings's claim as to his clemency proceeding.

## B

Next, Jennings argues he was denied due process under the Fifth Amendment, adequate representation of counsel under the Sixth Amendment, his Eighth Amendment rights, and access to the courts in violation of the Fourteenth Amendment, along with his corresponding rights under the Florida Constitution, because the Governor signed his death warrant at a time when he was unrepresented in state court: his lawyer died in 2022. He separately raises the same issue in his motion to vacate the death

warrant or for a stay of execution. The circuit court denied these claims. We find no fault in its decisions.

From as early as 1991, Jennings was represented in state court by the Office of the Capital Collateral Representative (CCR). *See Jennings V*, 583 So. 2d 316 (Jennings's initial rule 3.850 motion, listing Larry Helm Spalding, Martin J. McClain, Jerome H. Nickerson, and Bret R. Strand from the Office of the Capital Collateral Representative, Tallahassee, for Jennings). Mr. McClain continued representing Jennings in state proceedings for many years thereafter, including after leaving CCR. *See Jennings VII*, 782 So. 2d 853 (Jennings's remanded initial rule 3.850 postconviction motion, noting Martin J. McClain, Brooklyn, NY, for Jennings); *Jennings XI*, 265 So. 3d 460 (Jennings's fourth successive rule 3.851 motion, noting Martin J. McClain of McClain & McDermott, P.A., Wilton Manors, Florida, for Jennings).

In federal court, too, Mr. McClain continued to advocate for Jennings after leaving CCR. *See Jennings XIV*, 392 F. Supp. 2d 1312 (Jennings's first federal habeas petition, noting Martin James McClain, McClain & McDermott PA, Wilton Manors, FL, for Jennings); *Jennings XV*, 490 F.3d 1230 (noting Martin J.

McClain (Court–Appointed), Wilton Manors, FL, for Jennings). In addition to Mr. McClain's advocacy in federal court, Jennings was also appointed attorneys from the Capital Habeas Unit of the Federal Public Defender's Office (CHU) throughout his recent federal proceedings. *See Jennings XX*, 108 F.4th 1299 (Jennings's second federal habeas petition, listing John Abatecola, Terri L. Backhus, Linda McDermott, Federal Public Defender's Office, Tallahassee, FL, for Jennings). Jennings is represented by the Federal Public Defender's Office in his federal proceedings today.[6]

In 2022, four years after this Court denied relief on Jennings's fourth successive rule 3.851 motion for postconviction relief (*Jennings XI*), Mr. McClain passed away. Jennings claims he was entitled to continuous representation, including after Mr. McClain's passing, despite the fact he had no matter pending in state court until these warrant proceedings began. We disagree.

---

6. On October 22, 2025, counsel for Jennings, Linda McDermott from the Office of the Federal Public Defender for the Northern District of Florida, filed on Jennings's behalf a complaint for declaratory and injunctive relief under 42 U.S.C. § 1983 seeking a stay of his execution.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution ensures that no state shall "deprive any person of life, liberty, or property, without due process of law." Amend. XIV, U.S. Const. Our Florida Constitution similarly provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. We have long recognized that "[d]ue process requires that a defendant be given notice and an opportunity to be heard on a matter before it is decided." *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016) (citing *Huff v. State*, 622 So. 2d 982, 982 (Fla. 1993)).

Jennings argues he has been denied access to the courts and deprived of active investigation into potential claims since his attorney's passing in 2022. He claims that under Florida Rule of Criminal Procedure 3.851 and section 27.710, Florida Statutes, he was entitled to appointed counsel—at all times—unless a judge allowed counsel to withdraw or the sentence was reversed, reduced, or carried out, regardless of whether another attorney represented him in a federal court. *See* Fla. R. Crim. P. 3.851(b)(5); § 27.710(4), Fla. Stat. But rule 3.851 and chapter 27 only require representation during postconviction proceedings. They are silent

about representation when no matters are pending.  *See* Fla. R. Crim. P. 3.851(a) ("This rule applies to all postconviction proceedings that commence on issuance of the appellate mandate affirming the death sentence . . . ."); § 27.711(1)(a), Fla. Stat. (defining "[c]apital defendant" as "the person who is represented in postconviction capital collateral proceedings by an attorney appointed under s. 27.710"); § 27.711(1)(c), Fla. Stat. (defining "[p]ostconviction capital collateral proceedings" as "one series of collateral litigation of an affirmed conviction and sentence of death").

Jennings has been represented by counsel during every postconviction proceeding, both in state and federal court.  While he may have been unrepresented in state court during the three-year period between his attorney's passing and CCRC-M's appointment after the signing of his death warrant, Jennings benefitted from Mr. McClain's representation in all five of his postconviction motions. Furthermore, he continued to be represented by federal counsel even after Mr. McClain's passing.  And now, in his sixth postconviction motion, he has been appointed the services of CCRC-M.

Jennings argues that, without continuous state postconviction counsel, no one has tracked any changes in his mental or physical health or any other possible grounds for postconviction relief. But that ignores exactly what his federal counsel was available to do. Even after Mr. McClain's death, Jennings continued to receive, and to date receives, the benefit of his federal CHU counsel. Jennings's suggestion that postconviction counsel was required to actively investigate his case for the last three years we rejected in *Asay*, where we found even a ten-year period without appointed counsel did not violate due process where the defendant "was represented by counsel at every stage of his postconviction proceedings." *Asay*, 210 So. 3d at 27-28 (explaining that section 27.710, Florida Statutes, does not mandate that postconviction counsel actively investigate a defendant's case and continuously bring forth new arguments). Here, that can be said for Jennings, so we reject his contention that any gap in his representation over the last four decades amounts to a denial of due process.

Jennings also argues that the warrant schedule prevents his current counsel from providing effective assistance under the Sixth Amendment, and therefore effectively violates the Fourteenth

Amendment's guarantee to due process as well. He alleges that the office of CCRC-M has been given an impossible task of reviewing over forty-six years of proceedings and cannot under any circumstances develop sufficient factual claims to support the granting of an evidentiary hearing or a stay of execution.

It is true that, under Florida law, individuals sentenced to death are entitled to the appointment of capital postconviction counsel for the purpose of pursuing any collateral attacks on their convictions and sentences. *See* § 27.702(1), Fla. Stat. (2025) ("The capital collateral regional counsel shall represent each person convicted and sentenced to death in this state for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed . . . ."); *Spalding v. Dugger*, 526 So. 2d 71, 72 (Fla. 1988). But Jennings does not say that he sought the appointment of counsel for that purpose.

We have also said that this statutory provision "does not create a right to effective assistance of postconviction counsel," for the statute itself "plainly states that '[a]n action taken by an attorney who represents a capital defendant in postconviction capital collateral proceedings may not be the basis for a claim of

- 25 -

ineffective assistance of counsel.' " *Barwick v. State*, 361 So. 3d 785, 790 (Fla. 2023) (alteration in original and citation omitted) (holding that *Spalding* only requires that a defendant be represented by an attorney during postconviction proceedings); *see also Asay*, 210 So. 3d at 28-29 ("[T]his Court has repeatedly held that defendants are not entitled to effective assistance of collateral counsel."); *Gore v. State*, 91 So. 3d 769, 778 (Fla. 2012) (explaining that there is no independent cause of action for ineffective assistance of collateral counsel in Florida); *Zack v. State*, 911 So. 2d 1190, 1203 (Fla. 2005) ("Under Florida and federal law, a defendant has no constitutional right to effective collateral counsel.").

To the extent he argues that the warrant schedule in this matter renders the assistance of his counsel ineffective, the applicable statute and our settled law provide Jennings no avenue of relief. Jennings's counsel has zealously represented him since CCRC-M was appointed. This is what the statute requires. *See Hall v. State*, 420 So. 2d 872, 874 (Fla. 1982) (holding that the denial of a continuance of warrant proceedings was proper where counsel had only fourteen days between appointment and the scheduled execution).

We have recently considered and rejected claims similar to Jennings's, holding "an expedited warrant litigation schedule does not deprive a defendant of his right to due process." *Windom v. State*, 416 So. 3d 1140, 1150 (Fla.), *cert. denied*, No. 25-5440, 2025 WL 2460118 (U.S. Aug. 27, 2025); *see also Zakrzewski*, 415 So. 3d at 211 (rejecting claim that expedited process of warrant litigation deprived defendant of his due process rights); *Bell v. State*, 415 So. 3d 85, 106-07 (Fla.) (rejecting challenge to time period set in death warrant proceedings), *cert. denied*, 145 S. Ct. 2872 (2025); *Tanzi v. State*, 407 So. 3d 385, 393 (Fla.) (rejecting similar constitutional arguments attacking the compressed warrant litigation schedule), *cert. denied*, 145 S. Ct. 1914 (2025).

To the extent Jennings believes the warrant proceedings violate his Eighth Amendment rights, he offers no argument to support this claim. The issue is insufficiently presented and therefore waived. *See Miller v. State*, 161 So. 3d 354, 383 (Fla. 2015) (holding that conclusory allegations of ineffective assistance of counsel consisting of a single statement are insufficient and therefore waived); *Wyatt v. State*, 71 So. 3d 86, 111 n.19 (Fla. 2011) (claim was insufficiently pled and therefore waived for purposes of

appeal when defendant cited no authority demonstrating a right to public-records access).

**C**

In his final claim, Jennings asserts that Florida's capital sentencing regime is constitutionally deficient for several reasons. He contends that Florida's capital sentencing system "no longer meaningfully narrows death eligibility" and is facially invalid because (1) a death sentence does not require a unanimous jury recommendation and (2) proportionality review is not mandated. Jennings further argues (3) that the Governor deployed an "opaque" and "arbitrary" process in signing Jennings's warrant instead of carrying out the sentences of other warrant-eligible individuals. He likewise contends (4) that the State's clemency process is "stale and secretive." And finally, Jennings argues (5) that his sentence cannot be constitutionally carried out because he was "deni[ed] . . . continuous counsel." We have repeatedly rejected these claims, which are without merit.

Beginning with Jennings's facial challenge, as we have explained, "neither the Eighth Amendment nor any provision in our state constitution requires jury sentencing in capital cases, or a

- 28 -

unanimous jury recommendation, or indeed any jury recommendation at all." *Herard v. State*, 390 So. 3d 610, 622-23 (Fla. 2024) (citing *Poole*, 297 So. 3d at 503-05), *cert. denied*, 145 S. Ct. 1315 (2025). Moreover, "we have 'repeatedly rejected the argument that the death-penalty statute violates the Eighth Amendment because it fails to sufficiently narrow the class of murderers eligible for the death penalty.' Eliminating proportionality review did not change that." *Loyd v. State*, 379 So. 3d 1080, 1097-98 (Fla. 2023) (citation omitted) (quoting *Wells v. State*, 364 So. 3d 1005, 1015 (Fla. 2023)), *cert. denied*, 145 S. Ct. 188 (2024). Simply put, "there is no merit to the suggestion that the lack of proportionality review renders the entire capital sentencing scheme in Florida facially unconstitutional for failing to narrow the class of death-eligible defendants." *Fletcher v. State*, 415 So. 3d 147, 162-63 (Fla. 2025), *petition for cert. filed*, No. 25-5923 (U.S. Oct. 21, 2025). Jennings does not offer any basis to depart from this precedent, so we likewise reject his facial challenge here.

Next, Jennings says that by signing his death warrant "while dozens of represented, warrant-eligible prisoners remained, the

- 29 -

Governor exercised the State's ultimate power in a manner that was arbitrary and opaque." The argument is likewise foreclosed by this Court's precedent. Indeed, "[w]e have repeatedly held that the Governor's broad discretion in selecting which death warrants to sign and when does not violate the United States Constitution or the Florida Constitution." *Zakrzewski*, 415 So. 3d at 210; *see also Hutchinson v. State*, 416 So. 3d 273, 280 (Fla.) ("[W]e are aware of no constitutional principle that demands a fixed formula, thereby limiting the decisionmaker in determining the order of execution."), *cert. denied*, 145 S. Ct. 1980 (2025); *Gore*, 91 So. 3d at 780 (rejecting claims that the Governor's absolute discretion to sign death warrants violates the United States Constitution).

Jennings does not dispute that he is eligible for a death warrant. His observation that the Governor could have exercised his discretion to sign another death warrant does not provide a basis for relief, because the Governor has "broad discretion in selecting which death warrants to sign and when." *Zakrzewski*, 415 So. 3d at 210. We have never disturbed the Governor's exercise of this discretion, and we decline to do so in this case.

Jennings's last two arguments—that his "denial of continuous counsel" and a "stale and secretive clemency process" render Florida's capital sentencing scheme unconstitutional—are simply repackaged versions of his first two claims, which we reject. *See supra* pp. 13-28. Jennings was represented at every stage of his postconviction proceedings. His claim that he was denied "continuous counsel" stems from his incorrect suggestion that he was entitled to postconviction counsel actively investigating his case for the thirty-plus years from his sentence to the signing of the warrant. Jennings was also given a full clemency hearing where he was represented by counsel. The clemency process performed as a fail-safe as intended. And this Court will not second-guess the Governor's clemency determination.[7]

### III

Jennings's habeas petition alleges he has been deprived of life, liberty, and property interests based on the lack of state court

---

7. As each of Jennings's discrete attacks on Florida's capital sentencing regime fail, we also reject Jennings's contention that the "cumulative effect" of each of these purported "deficiencies" renders the system unconstitutional.

representation since his attorney passed in 2022. He claims the lapse in representation violates his due process rights under the Fourteenth Amendment to the United States Constitution. Jennings relies on section 27.711(12), Florida Statutes, which requires the court to "monitor the performance of assigned counsel to ensure that the capital defendant is receiving quality representation." § 27.711(12), Fla. Stat. This claim is nearly identical to the second issue Jennings raises in his fifth successive postconviction motion, which we reject for the reasons already articulated. Jennings simply rewords his argument as a deprivation of life, liberty, and property interests. "Habeas corpus is not to be used to litigate or relitigate issues which could have been, should have been, or were previously raised." *Gaskin v. State*, 361 So. 3d 300, 309 (Fla. 2023). This claim is procedurally barred.

Still, we reiterate that Jennings did, in fact, have the benefit of counsel for his first postconviction motion and the four successive postconviction motions filed thereafter. Jennings argues that chapter 27 creates life, liberty, and property rights to continuous representation. It does not.

First, as we have established, chapter 27 only requires representation during postconviction proceedings. *See* § 27.711(1)(a), Fla. Stat. And we have held that the right to postconviction counsel is purely "statutory in nature, not constitutional." *Darling v. State*, 45 So. 3d 444, 455 (Fla. 2010) (emphasis omitted). We have specifically held that "[u]nder Florida and federal law, a defendant has no constitutional right to effective collateral counsel." *Barwick*, 361 So. 3d at 791 (alteration in original) (quoting *Zack*, 911 So. 2d at 1203). Section 27.7002, Florida Statutes, explicitly provides that it "does not create any right on behalf of any person, provided counsel pursuant to any provision of this chapter, to challenge in any form or manner the adequacy of the collateral representation provided." § 27.7002(1), Fla. Stat. Further, under section 27.711, postconviction capital collateral proceedings "do[] not include repetitive or successive collateral challenges to a conviction and sentence of death which is affirmed by the Supreme Court and undisturbed by any collateral litigation." § 27.711(1)(c), Fla. Stat. Thus, Jennings was not denied due process when he was provided counsel at all relevant stages of his postconviction proceedings.

Next, Jennings argues his lack of representation after his attorney's passing in 2022 denied him meaningful access to the courts. We reject this. In his first postconviction motion, each of his four successive postconviction motions, and now in his fifth successive postconviction motion, Jennings has been provided notice, counsel, and the opportunity to raise challenges. The extensive procedural history we have summarized demonstrates ample access to the courts. Jennings "had notice of each postconviction proceeding and the opportunity to have counsel argue his claims before the court." *Asay*, 210 So. 3d at 28.

Finally, Jennings argues that he has been denied equal protection because the Governor passed over other warrant-eligible individuals who are already represented by state collateral counsel. We reject this argument for the reasons we have already articulated.

**IV**

We affirm the summary denial of Jennings's motion for postconviction relief and deny his request for an evidentiary hearing. We deny his concurrent motion to vacate the death warrant or stay the execution, and we deny his petition seeking an order from this Court directing the circuit court to vacate the death

warrant or stay the execution. Additionally, we deny Jennings's petition for a writ of habeas corpus.

No motion for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs in result.
CANADY, J., recused.

An Appeal from the Circuit Court in and for Brevard County,
    Kelly J. McKibben, Judge – Case No. 051979CF000773AXXXXX
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Tracy Martinell Henry, Assistant Capital Collateral Regional Counsel, Cortney L. Hackett, Assistant Capital Collateral Regional Counsel, and Arielle B. Jackson, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Jonathan S. Tannen, Senior Assistant Attorney General, Naomi Nichols, Senior Assistant Attorney General, and Michael W. Mervine, Special Counsel, Assistant Attorney General, Tampa, Florida,

    for Appellee/Respondent